**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| In re: | Chapter 11 |
| GLOBAL AVIATION HOLDINGS INC., *et al.*, | Case Nos. 12-40783 (CEC) |
| | 12-40782 (CEC) |
| | 12-40784 (CEC) |
| | 12-40785 (CEC) |
| | 12-40786 (CEC) |
| | 12-40787 (CEC) |
| | 12-40788 (CEC) |
| | 12-40789 (CEC) |
| | 12-40790 (CEC) |
| Debtors. | Jointly Administered |

---

### FINAL ORDER (I) AUTHORIZING DEBTORS (A) TO OBTAIN POST-PETITION SECURED FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362 AND 364, AND (B) TO UTILIZE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363; (II) GRANTING LIENS AND SUPER-PRIORITY CLAIMS; AND (III) GRANTING ADEQUATE PROTECTION TO PRE-PETITION SECURED PARTIES PURSUANT TO 11 U.S.C. §§ 361, 362, 363 AND 364

Global Aviation Holdings Inc. (the "*Borrower*") and certain of its affiliates, each as a debtor and debtor-in-possession (collectively, with the Borrower, the "*Debtors*") in the above-captioned chapter 11 cases (collectively, the "*Cases*" and each of the Cases upon either appointment of any trustee or any other estate representative or conversion to a case under chapter 7 of the Bankruptcy Code (as defined below), a "*Successor Case*") having filed a motion, dated February 24, 2012 (the "*Motion*"), requesting entry of an interim order and a final order (this "*Final Order*") pursuant to sections 105, 361, 362, 363, 364, and 507 of chapter 11 of title 11 of the United States Code (as amended, the "*Bankruptcy Code*"), Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*"), and the Local Bankruptcy Rules for the Eastern District of New York (the "*Local Rules*") seeking, among other things:

(i)      authorization for the Borrower to obtain loans and provide for the Roll-Up Notes (as defined below) under the DIP Facility (as defined below), and for certain of the Guarantors (as defined below) to guaranty the Borrowers' obligations in connection with the DIP Facility, up to the aggregate principal amount of $45 million, from the DIP Agent (as defined below) and the DIP Lenders (as defined below);

(ii)     approval of the terms of, and authorization for the Debtors to execute and perform under, the DIP Credit Agreement and the other Loan Documents (each as defined below) and to perform such other and further acts as may be required in connection with the DIP Loan Documents;

(iii)    authorization for the Debtors to grant, subject to the Carve-Out (as defined below) (x) to the DIP Agent, for the benefit of itself and the other DIP Lenders, the DIP Liens (as defined below) on all of the DIP Collateral (as defined below) pursuant to sections 364(c)(2), (c)(3) and (d) of the Bankruptcy Code, which DIP Liens shall be senior to the Primed Liens (as defined below) but shall be junior to any Permitted Prior Liens and (y) to the DIP Agent and the DIP Lenders, pursuant to section 364(c)(1) of the Bankruptcy Code, super-priority administrative claims having recourse to all pre-petition and post-petition property of the Debtors' estates, now owned or hereafter acquired, and any Debtors' rights under section 506(c) of the Bankruptcy Code and the proceeds thereof;

(iv)     authorization for the Debtors to use Pre-Petition Collateral (as defined below), including, without limitation, "cash collateral," as such term is defined in section 363 of the Bankruptcy Code (the "**Cash Collateral**"), in which the Indenture Trustee (as defined below) and the Second Lien Agent (as defined below) have a Lien or other interest, whether existing on the Commencement Date (as defined below), arising pursuant to this Final Order or otherwise;

(v)    authorization for the Debtors to grant, as of the Commencement Date and in accordance with the relative priorities set forth herein, certain adequate protection to the Indenture Trustee, the Senior Noteholders (as defined below), the Second Lien Agent, and the Second Lien Lenders (as defined below);

(vi)    to vacate the automatic stay imposed by section 362 of the Bankruptcy Code solely to the extent necessary to implement and effectuate the terms and provisions of the DIP Loan Documents and this Final Order and subject in all respects to the Debtors' rights under paragraph 16 herein;

(vii)    authorization for the Debtors, at any time prior to the entry of the Final Order, to borrow under the DIP Facility for the purposes of funding the operations of the Debtors' businesses, paying certain transaction fees and expenses and other costs and expenses of administration of the Cases, all subject to, and in accordance with, the DIP Loan Documents, this Final Order and the Approved Budget (as defined below);

(viii)    waiver of any applicable stay (including under Bankruptcy Rule 6004) and provision for immediate effectiveness of this Final Order.

Having considered the Motion, the DIP Credit Agreement, the *Declaration of Todd R. Snyder, Senior Managing Director of Rothschild Inc., In Support Of Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Financing and to Use Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Scheduling a Final Hearing, and (IV) Granting Related Relief* [ECF No. 136] (the "***Snyder Declaration***"), which the Court accepted into evidence at the hearing held and concluded before this Court on February 28, 2012 (the "***Interim Hearing***"), and the *Supplemental Declaration of Todd R. Snyder, Senior Managing Director of Rothschild Inc., In Support Of Debtors' Motion*

*for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Financing and to Use Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Scheduling a Final Hearing, and (IV) Granting Related Relief* [ECF No. 298] (the "**Supplemental Snyder Declaration**"), which the Court accepted into evidence at the hearing held and concluded before this Court on March 29, 2012 (the "**Final Hearing**"); and the Court having considered the limited objections and reservations of rights filed in response to the Motion, including those filed at ECF Nos. 139, 141, and 277; and such limited objections and reservations of rights having been withdrawn, resolved, or overruled; and in accordance with Bankruptcy Rules 2002, 4001(b), (c), and (d) and 9014 and all applicable Local Rules, notice of the Motion, the Interim Hearing, the Interim Order (as defined below) and the Final Hearing having been provided in a sufficient manner and in accordance with the Interim Order; and it appearing that approval of the relief requested in the Motion is fair and reasonable and in the best interests of the Debtors, their creditors, their estates and all parties in interest, and is essential for maximizing the value of the Debtors' businesses and assets for the benefit of the Debtors' creditors and all parties in interests; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED[1], that:**

A.  **Commencement Date**.  On February 5, 2012 (the "**Commencement Date**"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Eastern District of New York (this "**Court**").  The Debtors have continued in the management and operation of their business and properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.   On

---

[1]    Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, pursuant to Bankruptcy Rule 7052.

February 13, 2012, an official committee of unsecured creditors (the "***Committee***") was appointed in these Cases. No trustee, or examiner has been appointed in the Cases. On February 6, 2012, this Court entered an order [ECF No. 30] directing the joint administration of these Cases.

        B.      **<u>Interim Cash Collateral and Interim Order</u>**. On February 6, 2012, this Court also entered the *Interim Order Approving Debtors' Motion for Order (I) Authorizing Use of Cash Collateral, (II) Granting Adequate Protection to Pre-Petition Secured Lenders, (III) Scheduling Further Hearings, and (IV) Granting Related Relief* (the "***Interim Cash Collateral Order***") [ECF No. 32] approving the Debtors' interim use of cash collateral, thereby enabling the Debtors to operate their business in the ordinary course and providing the time necessary for the Debtors' to negotiate and obtain approval and adequate postpetition financing. On February 24, 2012, the Debtors filed the Motion. **As set forth in paragraph 2(h) of this Final Order, the DIP Facility includes a "roll-up" generally providing for $1 of secured super-priority administrative claims for every $1 of loans loaned and committed under the DIP Loan Documents and such "roll-up" and all other terms of the DIP Facility required to be disclosed in the Motion were adequately disclosed in the Motion in accordance with the *Guidelines for Financing Motions* set forth in the Court's Administrative Order No. 558 and all other applicable Bankruptcy Rules, Local Rules, and guidelines.** On March 1, 2012, this Court entered the *Interim Order (I) Authorizing Debtors (A) To Obtain Post-Petition Secured Financing Pursuant to 11 U.S.C. §§ 105, 361, 362 and 364, and (B) to Utilize Cash Collateral Pursuant to 11 U.S.C. § 363; (II) Granting Liens and Super-Priority Claims; (III) Granting Adequate Protection to the Pre-Petition Secured Parties Pursuant to 11 U.S.C.*

*§§ 361, 362, 363 and 364; and (IV) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001* [ECF No. 158] (the "**Interim Order**").

C.      **Jurisdiction and Venue**.  This Court has core jurisdiction over the Cases, the Motion and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue for the Cases and proceedings on the Motion is proper before this Court pursuant to 28 U.S.C. § 1408.  The statutory predicates for the relief sought herein are sections 105, 361, 362, 363, 364 and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6004 and 9014 and Local Rule 4001-5.

D.      **Notice**.  The Final Hearing is being held pursuant to the authorization of Bankruptcy Rule 4001.  Notice of the Final Hearing and the relief requested in the Motion has been provided by the Debtors, whether by facsimile, electronic mail, overnight courier or hand delivery, on February 24, 2012 and March 13, 2012, to certain parties in interest in accordance with the Interim Order, including:   (a) the United States Trustee for Region 2 (the "**U.S. Trustee**"); (b) Latham & Watkins, LLP, as counsel to that certain group of Senior Noteholders holding in aggregate more than $66^{2/3}$% in amount of the Senior Secured Notes, (the "**Senior Noteholder Group**"); (c) Moses & Singer LLP, as counsel to Deutsche Bank Trust Company Americas (the "**Indenture Trustee**"); (d) Wachtell, Lipton, Rosen & Katz, as counsel to the Second Lien Lenders; (e) counsel to the prepetition equityholders; (f) Lowenstein Sandler PC as proposed counsel to the Committee, (g) the International Brotherhood of Teamsters; (j) the Airline Pilots Association; (h) The Transport Workers Union of America AFL-CIO; (i) the New York Department of Taxation and Finance; (j) the New York City Department of Finance; (k) the United States Attorney for the Eastern District of New York; (l) the Internal Revenue Service; and (m) the Securities and Exchange Commission.  Under the circumstances, such

notice of the Motion, the relief requested therein, the entry of the Final Order and the Final Hearing complies with Bankruptcy Rule 4001(b), (c) and (d) and the Local Rules.

     E.    **<u>Debtors' Stipulations Regarding the Pre-Petition Credit Facilities</u>**.  Without prejudice to the rights of parties in interest to the extent set forth in paragraph 7 below, the Debtors on behalf of themselves and not on behalf of their estates, admit, stipulate, acknowledge and agree (paragraphs E(i) through E(vii) hereof shall be referred to herein collectively as the "***Debtors' Stipulations***") as follows:

     (i)    <u>Senior Notes Indenture</u>.  Pursuant to that certain Indenture, dated as of August 13, 2009 among Global Aviation Holdings Inc. ("***Holdings***"), North American Airlines, Inc. and World Airways, Inc. as Issuers, the Guarantors named therein and Wells Fargo Bank, National Association acting as trustee and collateral agent (the "***Senior Notes Indenture***" and, together with all other loan and security documents executed in connection therewith, the "***First Lien Credit Documents***") the holders (the "***Senior Noteholders***") of those certain 14% Senior Secured First Lien Notes due 2013 (the "***Senior Secured Notes***") extended loans to the Debtors.  All obligations of the Debtors arising under the Senior Notes Indenture including the "Obligations" as defined in the Senior Notes Indenture shall collectively be referred to herein as the "***First Lien Obligations.***"

     (ii)    <u>Second Lien Credit Facility</u>.  Pursuant to a second lien credit facility (the "***Second Lien Credit Facility***") under that certain Second-Lien Term Loan Credit Agreement dated as of September 29, 2009 (as supplemented or otherwise modified from time to time, the "***Second Lien Credit Agreement***" and, together with all other loan and security documents executed in connection therewith, the "***Second Lien Credit Documents***" and together with the First Lien Credit Documents, the "***Pre-Petition Credit Documents***"), among Holdings, North American

Airlines, Inc. and World Airways, Inc., as borrowers, the Guarantors party thereto, the Lenders party thereto (the "***Second Lien Lenders***") and Wells Fargo Bank, National Association as administrative agent for the Second Lien Lenders and collateral agent for the Secured Parties (as defined in the Second Lien Credit Agreement) (the "***Second Lien Agent***" and together with the Senior Noteholders, the Indenture Trustee and the Second Lien Lenders, the "***Pre-Petition Secured Parties***"), the Second lien Lenders extended loans to the Debtors in connection with the Second Lien Credit Facility.  All obligations of the Debtors arising under the Second Lien Credit Facility including the "Loan Obligations" as defined in the Second Lien Credit Agreement, shall be referred to herein as the "***Second Lien Credit Obligations***," and together with the First Lien Obligations shall collectively be referred to herein as the "***Pre-Petition Credit Obligations***."

(iii)      <u>Pre-Petition Credit Obligations</u>.  As of the Commencement Date, the Debtors were truly and justly indebted to the (a) Senior Noteholders pursuant to the First Lien Credit Documents, without defense, counterclaim or offset of any kind, in respect of loans made by the Senior Noteholders in the aggregate principal and accrued and unpaid interest amount of not less than $156.2 million in respect of the Senior Secured Notes *plus* any additional fees and expenses (including any attorneys', accountants', appraisers' and financial advisors' fees and expenses that are chargeable or reimbursable under the First Lien Credit Documents) now or hereafter due under the Senior Notes Indenture and the other First Lien Credit Documents and (b) to the Second Lien Lenders pursuant to the Second Lien Credit Documents, without defense, counterclaim or offset of any kind, in respect of loans made by the Second Lien Lenders in the aggregate principal amount of not less than $86,793,726.44 in respect of the Loans (as defined in the Second Lien Credit Agreement) *plus* all accrued and unpaid interest (including payment-in-kind interest) thereon and any additional fees (including a $6.0 million amendment fee) and

expenses (including any attorneys', accountants', appraisers' and financial advisors' fees and expenses that are chargeable or reimbursable under the Second Lien Credit Documents) now or hereafter due under the Second Lien Credit Agreement and the other Second Lien Credit Documents.

(iv)        <u>Pre-Petition First Liens and Collateral</u>.    Pursuant to the First Lien Credit Documents, the Debtors granted to the Indenture Trustee, for the benefit of the Senior Noteholders, to secure the First Lien Obligations, a first-priority security interest in and continuing lien (the "***Pre-Petition First Priority Liens***") on all or substantially all of the Debtors' assets and property (which for the avoidance of doubt includes Cash Collateral and "Collateral" as defined in the Senior Notes Indenture) and all proceeds, products, accessions, rents and profits thereof, in each case whether then owned or existing or thereafter acquired or arising (the "***Pre-Petition First Lien Collateral***").    As of the Commencement Date, the Pre-Petition First Priority Liens (a) are legal, valid, binding, enforceable, non-avoidable and perfected liens, (b) were granted to, or for the benefit of, the Senior Noteholders for fair consideration and reasonably equivalent value and (c) are not subject to avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.    The Pre-Petition First Priority Liens are subject and subordinate in all respects only to valid, prior, perfected and non-avoidable Permitted Liens (as defined in the Senior Notes Indenture) permitted under the Pre-Petition Credit Documents only to the extent that such liens are senior to the Pre-Petition First Priority Liens (after giving effect to any applicable intercreditor or subordination agreement) (the "***Permitted Prior Liens***")[2].    The First Lien Obligations and the

---

[2] For purposes of this Final Order, Permitted Prior Liens shall include any liens that were valid, senior, enforceable, prior, perfected and non-avoidable under applicable law as of the Commencement Date.   Nothing herein shall constitute a finding or ruling by this Court that any such liens are valid, senior, enforceable, prior, perfected or non-avoidable.   Moreover, nothing shall prejudice the rights of any party in interest including, but not limited to, the Debtors, the Indenture Trustee, the

First Lien Credit Documents constitute legal, valid and binding obligations of the applicable Debtors, enforceable in accordance with the terms of the applicable First Lien Credit Documents (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code).  No setoffs, recoupments, offsets, defenses or counterclaims to any of the First Lien Obligations exist and no portion of the First Lien Obligations or any payments made to any or all of the Indenture Trustee or the other Senior Noteholders are subject to avoidance, recharacterization, recovery, subordination, attack, offset, counterclaim, defense, or "claim" (as defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law.  Each of the guaranties provided pursuant to the First Lien Credit Documents continues in full force and effect notwithstanding any use of Cash Collateral permitted hereunder.

(v)        Pre-Petition Second Liens and Collateral.  Pursuant to the Second Lien Credit Documents, the Debtors granted to the Second Lien Agent, for the benefit of the Second Lien Lenders, to secure the Second Lien Credit Obligations, a second-priority security interest in and continuing lien (the "*Pre-Petition Second Priority Liens*" and together with the Pre-Petition First Priority Liens, the "*Pre-Petition Liens*") on all or substantially all of the Debtors' assets and property (which for the avoidance of doubt includes Cash Collateral and "Collateral" as defined in the Second Lien Credit Agreement) and all proceeds, products, accessions, rents and profits thereof, in each case whether then owned or existing or thereafter acquired or arising (the "*Pre-Petition Second Lien Collateral*" and together with the Pre-Petition First Lien Collateral, the "*Pre-Petition Collateral*").  As of the Commencement Date, the Pre-Petition Second Priority Liens (a) are legal, valid, binding, enforceable, non-avoidable and perfected

---

Second Lien Agent, the Pre-Petition Secured Parties and any Committee to challenge the validity, priority, enforceability, seniority, avoidability, perfection or extent of any such liens and/or security interests.

liens, (b) were granted to, or for the benefit of, the Second Lien Agent for the benefit of the Second Lien Lenders for fair consideration and reasonably equivalent value and (c) are not subject to avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law. The Pre-Petition Second Priority Liens are subject and subordinate to the Pre-Petition First Priority Liens and the Permitted Prior Liens. The Second Lien Credit Obligations and the Second Lien Credit Documents constitute legal, valid and binding obligations of the applicable Debtors, enforceable in accordance with the terms of the applicable Second Lien Credit Documents (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code). No setoffs, recoupments, offsets, defenses or counterclaims to any of the Second Lien Credit Obligations exist and no portion of the Second Lien Credit Obligations or any payments made to any or all of the Second Lien Agent or the other Second Lien Lenders are subject to avoidance, recharacterization, recovery, subordination, attack, offset, counterclaim, defense, or "claim" (as defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law. Each of the guaranties provided pursuant to the Second Lien Credit Documents continues in full force and effect notwithstanding any use of Cash Collateral permitted hereunder.

(vi)     Cash Collateral. The Debtors represent that all of the Debtors' cash, including the cash in its deposit accounts, wherever located, whether Pre-Petition Collateral or proceeds thereof, constitutes the Cash Collateral of the Pre-Petition Secured Parties.

(vii)     Release of Claims. Each Debtor shall be deemed to have forever waived, discharged, and released the Indenture Trustee, the Senior Noteholder Group, the Second Lien Agent and the other Pre-Petition Secured Parties, together with their respective affiliates, agents, attorneys, financial advisors, consultants, officers, directors, and employees (all of the foregoing,

collectively, the "***Pre-Petition Secured Party Releasees***") of any and all "claims" (as defined in the Bankruptcy Code), counterclaims, causes of action, defenses, setoff, recoupment, or other offset rights against any and all of the Pre-Petition Secured Party Releasees, whether arising at law or in equity, with respect to the Pre-Petition Credit Obligations, the Pre-Petition Liens, including (a) any recharacterization, subordination, avoidance, or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code, or under any other similar provisions of applicable state or federal law, and (b) any right or basis to challenge or object to the amount, validity, characterization or enforceability of the Pre-Petition Credit Obligations, or the validity, characterization, enforceability, priority, or non-avoidability of the Pre-Petition Liens.

F.      **Findings Regarding the DIP Facility**.

(i)      Need for Post-Petition Financing.  The Debtors have an immediate need to obtain loans under the DIP Facility and use Cash Collateral to, among other things, permit the orderly continuation of the operation of their businesses, to maintain business relationships with vendors, suppliers and customers, to make payroll, to make capital expenditures, and to satisfy other working capital and operational needs, and to facilitate the orderly liquidation of the Debtors' businesses through one or more sales of substantially all of the Debtors' assets.  The Debtors' access to sufficient working capital and liquidity through the use of Cash Collateral and borrowing under the DIP Facility is vital to maximizing the value of the Debtors' assets and businesses for the benefit of the Debtors' creditors and parties in interest.

(ii)      No Credit Available on More Favorable Terms.  As set forth in the Motion and in the Snyder Declaration and the Supplemental Snyder Declaration, the Debtors have been and continue to be unable to obtain financing on more favorable terms from sources other than

the DIP Lenders under the DIP Loan Documents. The Debtors are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtors are also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code without (i) granting to the DIP Lenders the rights, remedies, privileges, benefits and protections provided herein and in the DIP Loan Documents, including the DIP Liens and the DIP Super-Priority Claims (as defined below), (ii) allowing the Senior Noteholder Group to provide the DIP Facility on the terms set forth herein and in the DIP Loan Documents, and (iii) granting to the DIP Lenders superpriority claims and priming liens with respect to the certain Senior Secured Notes beneficially owned by each DIP Lender (the "***Roll Up Notes***") (all of the foregoing described in clauses (i), (ii) and (iii) above, including the DIP Liens and the DIP Super-Priority Claims, collectively, the "***DIP Protections***"), and (iv) providing the Indenture Trustee, the Senior Noteholders, the Second Lien Agent and the Second Lien Lenders the adequate protection more fully described in paragraphs 4 and 5 below.

G. **Adequate Protection for, and Good Faith of, the Pre-Petition Agent and Pre-Petition Lenders**. The Senior Noteholder Group, the Second Lien Agent and the other Pre-Petition Secured Parties have negotiated in good faith regarding the Debtors' use of the Pre-Petition Collateral (including the Cash Collateral) to fund the administration of the Debtors' estates and continued operation of their businesses. The Senior Noteholder Group, the Second Lien Agent and the other Pre-Petition Secured Parties have agreed to permit the Debtors to use the Pre-Petition Collateral, including the Cash Collateral, subject to the terms and conditions set forth herein, including the protections afforded a party acting in "good faith" under section 364(e) of the Bankruptcy Code. In addition, the DIP Facility contemplated hereby provides for a

priming of the Pre-Petition Liens pursuant to section 364(d) of the Bankruptcy Code. The Senior Noteholders, the Second Lien Agent and the other Pre-Petition Secured Parties are entitled to the adequate protection as set forth herein pursuant to sections 361, 362, 363, 364 and 507(b) of the Bankruptcy Code for the diminution in value of the Pre-Petition Collateral. Based on the Motion and on the record presented to the Court at the Interim Hearing and the Final Hearing, the terms of the proposed adequate protection arrangements and the use of the Cash Collateral contemplated hereby are fair and reasonable, reflect the Debtors' prudent exercise of business judgment, and constitute reasonably equivalent value and fair consideration for the Senior Noteholder Group, the Second Lien Agent and the other Pre-Petition Secured Parties, none of whom has objected to the relief sought in this Final Order.

   H. **Limited Consent**. The Senior Noteholder Group has consented to the Debtors' priming of their liens by the DIP Liens pursuant (and solely pursuant to) the terms of the DIP Facility presently before this Court, with Cantor Fitzgerald Securities as DIP Agent, and shall not be deemed to extend to any other post-petition financing or to any modified version of this DIP Facility. Nothing in this Final Order, including any of the provisions herein with respect to adequate protection, shall constitute, or be deemed to constitute, a finding that the interests of any of the Pre-Petition Secured Parties are or will be adequately protected with respect to any non-consensual use of Cash Collateral or non-consensual priming of the Pre-Petition Liens.

   I. **Business Judgment and Good Faith Pursuant to section 364(e)**.

   (i) The DIP Lenders have indicated a willingness to provide post-petition secured financing pursuant to the DIP Facility to the Debtors in accordance with the DIP Loan Documents and this Final Order.

(ii)     The terms and conditions of the DIP Facility, including the treatment of the Roll Up Notes, pursuant to the DIP Loan Documents and this Final Order, and the fees paid and to be paid thereunder, are fair, reasonable, and the best available under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

(iii)     The DIP Facility and DIP Loan Documents were negotiated in good faith and at arm's length among the Debtors, the DIP Agent and the DIP Lenders with the assistance and counsel of their respective advisors, and all of the DIP Obligations shall be deemed to have been extended by the DIP Lenders and their affiliates for valid business purposes and uses and in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the DIP Liens, the DIP Super-Priority Claims and the other DIP Protections shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event this Final Order or any other order or any provision hereof or thereof is vacated, reversed, amended or modified, on appeal or otherwise.

J.     **Relief Essential; Best Interest**.  For the reasons stated above and in the Interim Order, the continued availability of the DIP Facility (in the full amount provided for therein) and Cash Collateral in accordance with this Final Order and the DIP Loan Documents is therefore in the best interests of the Debtors' estates and consistent with their fiduciary duties.

**NOW, THEREFORE**, on the Motion and the record before this Court with respect to the Motion, and with the consent or non-objection of the Debtors, the Senior Noteholder Group, the Second Lien Agent and the other Pre-Petition Secured Parties to the form and entry of this Final Order, and good and sufficient cause appearing therefor,

**IT IS ORDERED** that:

1.    **Motion Granted**.  The Motion is granted in accordance with the terms and conditions set forth in this Final Order and the DIP Loan Documents.  This Final Order shall become effective immediately upon its entry.  Any objections to the Motion with respect to the entry of this Final Order that have not been withdrawn, waived or settled, are denied and overruled.

2.    **DIP Loan Documents and DIP Protections**.

(a)    Ratification of the Interim Order; Approval of DIP Loan Documents.  The terms of the Interim Order are hereby ratified and confirmed, except to the extent amended or modified by this Final Order, and all DIP Obligations (as defined below) incurred and borrowings and payments made and protections afforded any parties thereunder are ratified and confirmed on a final basis and shall be deemed made in accordance with and pursuant to this Final Order.  The DIP Loan Documents are hereby approved on a final basis.  The Debtors are expressly and immediately authorized on a final basis to obtain post-petition financing (the "*DIP Facility*"), to perform under that certain Senior Super-Priority Debtor-In-Possession Credit Agreement, dated as of March 27, 2012 attached as Exhibit C hereto, with Cantor Fitzgerald Securities acting as administrative agent and collateral agent (in such capacity, the "*DIP Agent*"), for itself and certain other lenders (collectively, the "*DIP Lenders*") (as the same may be amended, restated, supplemented or otherwise modified from time to time, the "*DIP Credit Agreement*"),[3] and the other Loan Documents (as defined in the DIP Credit Agreement and, together with the DIP Credit Agreement, the "*DIP Loan Documents*") and to incur the DIP Obligations (as defined below) in accordance with, and subject to, the terms of this

---

[3]    Unless otherwise specified, all capitalized terms used herein without definition shall have the respective meanings given such terms in the DIP Credit Agreement.

Final Order and the DIP Loan Documents, and to execute, deliver and perform under all other instruments, certificates, agreements and documents which may be required or necessary for the performance by the applicable Debtors under the DIP Facility and the creation and perfection of the DIP Liens described in, and provided for by, this Final Order and the DIP Loan Documents. The Debtors are hereby authorized, and directed, to do and perform all acts and pay the principal, interest, fees, expenses and other amounts described in the DIP Loan Documents as such become due pursuant to the DIP Loan Documents and this Final Order, including all closing fees, administrative fees, commitment fees and reasonable attorneys', financial advisors', and accountants' fees, and disbursements arising under the DIP Loan Documents and this Final Order, which amounts shall not be subject to further approval of this Court and shall be non-refundable; provided, however, that the payment of the fees and expenses of the Lender Professionals (as defined below) incurred after the Commencement Date shall be subject to the provisions of paragraph 19.  Upon their execution and delivery, the DIP Loan Documents shall represent valid and binding obligations of the applicable Debtors enforceable against such Debtors in accordance with their terms.  Each Responsible Officer of a Debtor acting singly is hereby authorized to execute and deliver each of the DIP Loan Documents, such execution and delivery to be conclusive of their respective authority to act in the name of and on behalf of the Debtors.

(b)     DIP Obligations.    For purposes of this Final Order, the term "**DIP Obligations**" shall mean all amounts owing under the DIP Credit Agreement, the other DIP Loan Documents and the Roll Up Notes (including all "Obligations" as defined in the DIP Credit Agreement) and shall include the principal of, interest on and fees, costs, expenses and other charges owing in respect of, such amounts (including any reasonable attorneys',

accountants', financial advisors' and other fees, costs and expenses that are chargeable or reimbursable under the DIP Loan Documents), and any obligations in respect of indemnity and reimbursement claims, whether contingent or otherwise.

(c)    Authorization to Incur DIP Obligations.    Subject to the terms and conditions of this Final Order, the DIP Loan Documents and the Approved Budget, the Debtors are hereby authorized on a final basis to borrow under and pursuant to the terms of the DIP Facility in an aggregate outstanding principal amount not to exceed $45 million and to provide for the Roll Up Notes.  All DIP Obligations shall be unconditionally guaranteed by all of the other Debtors (collectively, the "*Guarantors*"), as further provided in the DIP Loan Documents.

(d)    Approved Budget.    Attached as Exhibit A to the Interim Order was a thirteen-week cash flow budget in form and substance satisfactory to the DIP Agent, the DIP Lenders and the Senior Noteholder Group (the "*Initial Approved Budget*") which reflects, on a line-item basis for such thirteen-week period, the Debtors' projected cash receipts and disbursements (including ordinary course operating expenses, bankruptcy-related expenses under the Cases, capital expenditures and fees and expenses of the DIP Lenders and the Senior Noteholder Group (including counsel, financial advisors and other professionals therefor)), and unrestricted cash on hand.  The Initial Approved Budget, as it may be replaced in accordance with the provisions of this paragraph 3(a), shall be the "Approved Budget."  Attached as Exhibit A hereto, is the current Approved Budget.  Beginning on April 3, 2012 (by 12:00 noon prevailing Eastern Time), and every second Tuesday thereafter (by 12:00 noon prevailing Eastern Time), the Debtors shall deliver to the DIP Agent, the DIP Lenders, the Senior Noteholder Group, the Second Lien Agent and the Committee an updated thirteen-week cash flow budget (each such updated budget, a "*Supplemental Budget*").  If and only if the DIP

Agent, the DIP Lenders and the Senior Noteholder Group approve such Supplemental Budget, with such approval not to be unreasonably withheld where such Supplemental Budget is reasonably consistent with the then-existing Approved Budget (after taking into consideration the Debtors' actual performance relative to the then-existing Approved Budget and any reasonably expected improvements in such performance), then such Supplemental Budget shall automatically become the Approved Budget without further notice, motion or application to, order of, or hearing before this Court and shall replace the prior Approved Budget in its entirety; provided, however, that nothing contained in this Final Order shall be construed as consent by the U.S. Trustee or the Committee to any "compensation or benefits," reflected as such as a line item in the Budget, and the U.S. Trustee expressly reserves all of her rights to object or otherwise respond to any application that the Debtors may file seeking authorization to provide compensation and/or benefits in these Cases.

(e)    Budget Covenants.    For every one-week period commencing on February 27, 2012, and thereafter, tested by reference to the Variance Report each week, the aggregate expenditures and disbursements by the Debtors for each line item in the Approved Budget shall not exceed 15% of the corresponding line-item expenditures budgeted for such time period; provided, however, that any budgeted line-item expenditure for such one-week period may be increased by an amount equal to the unused portion of such corresponding budgeted line-item from the immediately preceding week, only to the extent that both weeks are the subject of the same Approved Budget then in effect and only during the time period in which such Approved Budget is then in effect.  On Tuesday of each week (by 12:00 noon prevailing Eastern Time), the Debtors shall provide to the DIP Agent, the Senior Noteholder Group, the Second Lien Lenders, the Committee and the U.S. Trustee, a variance report (a "***Variance***

*Report*") in the form attached hereto as <u>Exhibit B</u> with respect to the immediately prior week, setting forth (i) the actual cash receipts, expenditures and disbursements for such immediately preceding week on a line-item basis and available cash on hand as of the end of such week, (ii) the variance in dollar amounts of the actual expenditures and disbursements for each weekly period from those reflected for the corresponding period in the Approved Budget and (iii) a description of the nature of any positive or negative variance in excess of 5% in the "Adjusted Military Flying" line-item, any positive or negative variance in excess of 10% in any line-item, or any other material positive or negative variance, in each case, for each weekly period from what is reflected in the corresponding line-item for the corresponding period in the Approved Budget.

          (f)       <u>Interest, Fees, Costs and Expenses</u>.  Except to the extent set forth in paragraph 2(h) below, the DIP Obligations shall bear interest at the rates, and be due and payable (and paid), as set forth in, and in accordance with the terms and conditions of, this Final Order and the DIP Loan Documents, in each case without further notice, motion or application to, order of, or hearing before, this Court.  Subject to the provisions of paragraph 19 of this Final Order, as applicable, the Debtors shall pay all fees, costs, expenses (including reasonable and documented legal and other professional fees and expenses of the DIP Agent and the DIP Lenders) and other charges payable under the terms of the DIP Loan Documents without regard to the amounts set forth with respect thereto in the Approved Budget.  All such fees, costs, expenses and disbursements, whether incurred, paid or required to be paid post-petition, are hereby affirmed, ratified, authorized and payable (and any funds held by the DIP Agent the DIP Lenders and/or their professionals as of the Commencement Date for payment of such fees, costs, expenses and

disbursements may be applied for payment) as contemplated in this Final Order and the DIP Loan Documents filed with the Court, and shall be non-refundable.

(g)    <u>Use of DIP Facility Proceeds</u>.    Subject to the terms and conditions contained in this Final Order and the DIP Loan Documents, from and after the Commencement Date, the Debtors are authorized to use borrowings under the DIP Facility only for the purposes specifically set forth in this Final Order and the DIP Loan Documents and subject to and in accordance with the Approved Budget.  The Debtors shall be permitted to use the proceeds of the DIP Facility solely (i) as set forth in the Approved Budget and (ii) as authorized in other orders entered by the Court pursuant to motions, orders and requests for relief filed by the Debtors in each case, subject to and in accordance with the Interim Order or Final Order as applicable, the DIP Loan Documents and the Approved Budget.  Any Permitted Investments (as defined in the DIP Credit Agreement) shall comply with the *Final Order Authorizing the Debtors to (I) Continue to Operate the Cash Management System, (II) Honor Certain Prepetition Obligations Related Thereto, (III) Maintain Existing Business Forms, and (IV) Grant Administrative Claims and Perform Certain Intercompany Arrangements and Historical Practices* [E.C.F. 193].

(h)    **<u>Authorization of Roll-Up</u>.  On and as of the Closing Date, for every $1 of DIP Loans that a given DIP Lender has, as of April 27, 2012, loaned and committed to loan under the DIP Loan Documents (including all loans and commitments to loan purchased by Senior Noteholders after the date hereof and prior to April 27, 2012), $1 of Senior Secured Notes held by such DIP Lender will be converted into Roll-Up Notes that shall be deemed issued and outstanding under and otherwise governed by all provisions of the Senior Notes Indenture.  In addition to all of the rights and collateral provided under**

the First Lien Credit Documents (all of which shall be unaffected by the conversion to Roll-Up Notes), the Roll-Up Notes shall be administrative claims allowed against each Debtor and their respective estates, shall be secured by the DIP Liens (as defined below) on the DIP Collateral (as defined below), and the entire outstanding amount of the obligations of the Roll-Up Notes shall be allowed DIP Super-Priority Claims (as defined below); provided, that, the rights of the Roll-Up Notes to be paid from any realization upon the DIP Liens or proceeds from the DIP Collateral or the DIP Super-Priority Claims shall be subject and subordinate to the payment of the Obligations (as defined in the DIP Credit Agreement) in full therefrom.  Subject to the last sentence of this paragraph 2(h) and paragraph 7 herein, the right of each DIP Lender to receive Roll-Up Notes on the Closing Date is indefeasible and cannot be revoked, avoided, curtailed or impaired.  The Roll-Up Notes shall be freely transferrable and the Roll-Up Notes shall, in all instances, retain their status as Roll-Up Notes entitled to the benefits and protections of this Final Order.  The Roll-Up Notes shall continue to maintain the same terms (such as the applicable interest rate), conditions, entitlements and protections as all of the other Senior Secured Notes. Notwithstanding the foregoing or anything else in this Final Order to the contrary, in the event that a final order is entered granting the Committee, any trustee of the Debtors' estates appointed in these Cases, or other party in interest other than the Debtors, any relief against the Senior Noteholders on account of any Claims and Defenses (as defined below) invalidating or avoiding, in whole or any material part, the Pre-Petition First Priority Liens, the Court, after notice and hearing, may modify, limit or eliminate the provisions of this paragraph (h) and the other provisions of this Final Order with respect to the Roll-Up Notes.

(i)    <u>Conditions Precedent</u>.  The DIP Lenders shall have no obligation to make any DIP Loan unless and until all conditions precedent to the making of any such DIP Loan under the DIP Loan Documents and this Final Order have been satisfied in full or waived by the DIP Agent and/or the DIP Lenders in accordance with the DIP Loan Documents and this Final Order.

(j)    <u>DIP Liens</u>.  Subject to paragraph 18 herein and the Carve-Out, the Debtors hereby grant to the DIP Agent for its benefit and the ratable benefit of the DIP Lenders as security for the DIP Obligations and the Roll Up Notes, the following security interests and liens, which shall, immediately and without any further action, be valid, binding, permanent, fully perfected, continuing, enforceable and non-avoidable upon the date the Court enters this Final Order (the "***DIP Liens***"), on substantially all of the property of the Debtors, now existing or hereinafter acquired, including all Cash Collateral, cash and cash equivalents (whether maintained with the DIP Agent or otherwise), and any investment in such cash or cash equivalents, money, inventory, goods, accounts receivable, other rights to payment, intercompany loans and other investments, investment property, contracts, contract rights, properties, plants, equipment, machinery, general intangibles, payment intangibles, accounts, deposit accounts, documents, instruments, chattel paper, documents of title**,** letters of credit, letter of credit rights, supporting obligations, leases and other interests in leaseholds, real property, fixtures, patents, copyrights, trademarks, trade names, other intellectual property, intellectual property licenses, capital stock of subsidiaries, tax and other refunds, insurance proceeds, commercial tort claims, rights under section 506(c) of the Bankruptcy Code, all other collateral  and all other "property of the estate" (within the meaning of the Bankruptcy Code) of any kind or nature, real or personal, tangible, intangible or mixed, and all rents, products,

substitutions, accessions, profits, replacements and cash and non-cash proceeds of all of the foregoing (all of the foregoing collateral collectively referred to as the "**DIP Collateral**," and together with the Pre-Petition Collateral, the "**Collateral**").  Without otherwise limiting the generality of the foregoing, the DIP Collateral shall not include the Debtors' claims and causes of action under sections 502(d), 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code and any other avoidance or similar action under the Bankruptcy Code or similar state law, or any proceeds thereof.  The DIP Liens shall be comprised of the following:

    i.    <u>First Lien on Unencumbered Property</u>. Pursuant to section 364(c)(2) of the Bankruptcy Code, a perfected, binding, continuing, enforceable and non-avoidable first priority Lien on all unencumbered DIP Collateral;

    ii.    <u>Liens Junior to Certain Other Liens</u>. Pursuant to section 364(c)(3) of the Bankruptcy Code, a perfected, binding, continuing, enforceable and non-avoidable junior Lien on all DIP Collateral that is subject to any Permitted Prior Lien (whether existing immediately prior to the Commencement Date or perfected on or after the Commencement Date pursuant to section 546(b) of the Bankruptcy Code); and

    iii.    <u>Priming Liens</u>. Pursuant to section 364(d)(1) of the Bankruptcy Code, a perfected, binding, continuing, enforceable and non-avoidable first priority senior priming Lien on all DIP Collateral of the Debtors (including Cash Collateral) that is senior in all respects to (x) the Pre-Petition Liens and (y) except for the Permitted Prior Liens, any other liens in favor of any other person or entity, including all Liens junior to the Pre-Petition Liens (the "**Primed Liens**"), which Primed Liens, together with any Liens granted on or after the Commencement Date to provide adequate protection in respect of any of the Primed Liens, shall be primed by and

made subject and subordinate to the DIP Liens; provided, however, that the Liens described in this clause (iii) shall be subject and subordinate to the Carve-Out and the Permitted Prior Liens.

(k)    DIP Lien Priority.  Notwithstanding anything to the contrary contained in this Final Order or the other DIP Loan Documents, for the avoidance of doubt, the DIP Liens granted to the DIP Agent for the ratable benefit of the DIP Lenders shall in each and every case be first priority senior Liens that (i) are subject only to the Permitted Prior Liens and the Carve-Out, and (ii) except as provided in clause (ii) of paragraph 2(i), are senior to all pre-petition and post-petition Liens of any other person or entity (including the Primed Liens and the Adequate Protection Replacement Liens (as defined below)).  The DIP Liens and the DIP Super-Priority Claims (as defined below) (A) shall not be subject to sections 506(c), 510, 549, 550 or 551 of the Bankruptcy Code, (B) shall not be subordinate to, or *pari passu* with any intercompany or affiliate Liens of the Debtors, and (C) shall be valid and enforceable against any trustee or any other estate representative appointed in the Cases or in any Successor Case, and/or upon the dismissal of any of the Cases.  Except as otherwise expressly permitted by this Final Order or the DIP Loan Documents, no claim or Lien having a priority superior to or *pari passu* with those granted by this Final Order with respect to the DIP Obligations shall be granted or allowed until (x) all DIP Obligations have been indefeasibly paid in full in cash and (y) all commitments under the DIP Loan Documents have been irrevocably terminated.

(l)    Enforceable Obligations.  The DIP Loan Documents shall constitute and evidence the valid and binding DIP Obligations of the applicable Debtors, which DIP Obligations shall be enforceable against such Debtors, their estates and any successors thereto (including any trustee or other estate representative in any Successor Case), and their creditors, in accordance with their terms.  No obligation, payment, transfer or grant of security under the

Final Cash Collateral Order, the Interim Order, the DIP Credit Agreement, the other DIP Loan Documents or this Final Order shall be stayed, restrained, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable law (including under sections 502(d), 544, 547, 548 or 549 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual or otherwise) counterclaim, cross-claim, defense or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity.

(m)    Super-Priority Administrative Claim Status.  In addition to the DIP Liens granted herein, effective immediately upon entry of this Final Order, all of the DIP Obligations and the Roll Up Notes shall constitute allowed super-priority administrative claims pursuant to section 364(c)(1) of the Bankruptcy Code, which shall have priority, subject only to the payment of the Carve-Out, over all other administrative expense claims, adequate protection and other diminution claims (including the First Lien Super-Priority Claims and the Second Lien Super Priority Claims (each as defined below)), unsecured claims and all other claims against the applicable Debtors, now existing or hereafter arising, of any kind or nature whatsoever, including administrative expenses or other claims of the kinds specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 503, 507, 546, 726, 1113 and 1114 or any other provision of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment Lien or other non-consensual Lien, levy or attachment (the "***DIP Super-Priority Claims***").  The DIP Super-Priority Claims shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code,

shall be against each Debtor on a joint and several basis, and shall be payable from and have recourse to all pre-petition and post-petition property of the Debtors and all proceeds thereof. Other than as provided in the DIP Credit Agreement and this Final Order with respect to the Carve-Out, no costs or expenses of administration, including professional fees allowed and payable under sections 328, 330, 331 and 503 of the Bankruptcy Code, or otherwise, that have been or may be incurred in these proceedings, or in any Successor Cases, and no administrative priority claims or other priority claims are, or will be, senior to, prior to or *pari passu* with the DIP Liens and the DIP Super-Priority Claims or the DIP Obligations, or with any other claims of the DIP Lenders arising hereunder.

(n)     <u>Purchase of DIP Loans and Commitments</u>.  Each Senior Noteholder who is not a member of the Senior Noteholder Group shall have the right, on or prior to April 27, 2012, to purchase from the Senior Noteholder Group a pro rata amount (based upon such Senior Noteholder's percentage ownership of Senior Secured Notes), rounded to the nearest $50,000, of Loans and Commitments under the DIP Credit Agreement, at a price equal to the outstanding principal amount of loans purchased plus accrued and unpaid interest thereon as of the date of payment of the purchase price.  Each such purchase must be of an equal percentage of both Loans and Commitments.  Each such purchase shall be allocated among the members of the Senior Noteholder group on a pro rata basis (based upon the percentage ownership of each Senior Noteholder's Commitments under the DIP Credit Agreement), subject to any agreement among the members of the Senior Noteholder Group to allocate such purchase on a non-pro rata basis.  Each purchaser of Loans and Commitments under the DIP Credit Agreement from the Senior Noteholder Group shall be entitled to the DIP Protections, and all other rights, benefits

and protections provided to the DIP Lenders under the Interim Order, the Final Order and the DIP Loan Documents.

3.     **Authorization to Use Cash Collateral**.  Subject to paragraph 7 herein, the terms and protections of the Final Cash Collateral Order are hereby ratified and confirmed, except to the extent amended or modified by this Final Order, and all payments made and protections provided thereunder for any party, including creditors of the Debtors, are ratified and confirmed and shall be deemed made or provided in accordance with this Final Order.  Subject to the terms and conditions of this Final Order, the Debtors are authorized, pursuant to section 363 of the Bankruptcy Code, to use the Cash Collateral for a period of time from the date hereof until the earliest to occur of (i) the termination of the commitments under the DIP Facility or the acceleration of the DIP Obligations as set forth in the DIP Credit Agreement, (ii) the date that this Final Order ceases to be in full force and effect, (iii) immediately upon delivery of written notice to the Debtors and the Committee by the DIP Agent or its counsel of any breach or default by the Debtors of the terms and provisions of this Final Order, which breach or default has not been cured by the Debtors or waived in a manner consistent with the terms and conditions of the DIP Credit Agreement; (iv) immediately upon delivery of written notice to the Debtors and the Committee by the DIP Agent or its counsel of an Event of Default under the DIP Credit Agreement, which Event of Default has not been cured by the Debtors or waived in a manner consistent with the terms and conditions of the DIP Credit Agreement; (v) the conversion of any of the Cases to a chapter 7 case; or (vi) appointment of a trustee or examiner with expanded powers.  With the exception of payments to the Debtors' Professionals (as defined below) contemplated under the Carve-Out, each Debtor shall be prohibited from using Cash Collateral except in accordance with the terms and conditions of this Final Order, the DIP Loan Documents

and the Approved Budget, and nothing in this Final Order shall authorize the disposition of any assets of the Debtors or their estates outside of the ordinary course of business or any Debtor's use of any Cash Collateral or other proceeds resulting therefrom, except as permitted in the Interim Order, this Final Order or the DIP Loan Documents.

4.      **Adequate Protection for Pre-Petition Lenders**.  In consideration for the use of Cash Collateral, the consent of the Senior Noteholder Group to the entry of this Final Order and the priming of the Senior Noteholder Group's liens, claims and interests in the Pre-Petition Collateral (including Cash Collateral) from and after the Commencement Date, and subject to paragraph 7 herein, the Senior Noteholders collectively shall receive the following adequate protection (collectively, the "***First Lien Adequate Protection***"):

(a)      Replacement Liens.  Subject to paragraph 18 herein to the extent of any diminution in value of the interests of the Senior Noteholders in the Pre-Petition First Lien Collateral, including, without limitation, the Cash Collateral, from and after the Commencement Date, the Indenture Trustee, for the benefit of itself and the other Senior Noteholders, subject to the terms and conditions set forth below, pursuant to sections 361, 363(e) and 364 of the Bankruptcy Code, shall receive replacement Liens upon all of the DIP Collateral (the "***First Lien Replacement Liens***"), which First Lien Replacement Liens on such DIP Collateral shall be subject and subordinate only to the DIP Liens, the Permitted Prior Liens, and the Carve-Out, to the extent expressly provided in the DIP Loan Documents and this Final Order.

(b)      Super-Priority Claims.  To the extent of any diminution in value of the pre-petition interests of the Senior Noteholders in the Pre-Petition First Lien Collateral, the Senior Noteholders are hereby granted allowed super-priority administrative claims (such adequate protection super-priority claims, the "***First Lien Super-Priority Claims***"), pursuant to

section 507(b) of the Bankruptcy Code, junior only to the DIP Super-Priority Claims and the Carve-Out to the extent provided herein and in the DIP Loan Documents, and which First Lien Super-Priority Claims shall otherwise have priority over all administrative expenses of the kind specified in, or ordered pursuant to, any provision of the Bankruptcy Code, including, without limitation, those specified in, or ordered pursuant to, Sections 105, 326, 327, 328, 330, 503(b), 507(a) and (b), 546(c) 726, 1113 and 1114 of the Bankruptcy Code; provided, however, that the Senior Noteholders shall not receive or retain any payments, property or other amounts in respect of the First Lien Super-Priority Claims unless and until (x) all DIP Obligations and all payments due under the Carve-Out have been indefeasibly paid in full in cash and (y) all credit commitments under the DIP Loan Documents have been irrevocably terminated.  Subject to the relative priorities set forth above, the First Lien Super-Priority Claims against each Debtor shall be against each Debtor on a joint and several basis.

(c)    Professional Fees.  Without limiting any rights of the Indenture Trustee and the other Senior Noteholders under section 506(b) of the Bankruptcy Code which are hereby preserved, the Senior Noteholder Group and the Indenture Trustee shall receive current cash payment of fees and expenses due from time to time as more fully described in paragraph 19 below.

(d)    Reporting Requirements.  As further adequate protection, the Debtors shall deliver to the Senior Noteholder Group all information, reports, documents and other material that the Debtors provide to the DIP Lenders pursuant to the DIP Loan Documents.  The Debtors shall deliver to the U.S. Trustee any confidential information provided to the DIP Lenders under this Final Order or the DIP Loan Documents.

(e)    <u>Right to Seek Additional Adequate Protection</u>.  Under the circumstances and given that the above-described adequate protection is consistent with the Bankruptcy Code, including section 506(b) thereof, the Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of the Senior Noteholders.  However, the Indenture Trustee and the Senior Noteholder Group may request Court approval for additional or alternative adequate protection, without prejudice to any objection of the Debtors or any other party in interest to the grant of any additional or alternative adequate protection; <u>provided</u> that any such additional or alternative adequate protection shall at all times be subordinate and junior to the claims and Liens of the DIP Lenders granted under this Final Order and the DIP Loan Documents.

5.    **Adequate Protection For Second Lien Lenders**.  In consideration for the use of Cash Collateral, the non-opposition of the Second Lien Agent to the entry of this Final Order and the priming of the Second Lien Agent's liens, claims and interests in the Pre-Petition Collateral (including Cash Collateral) from and after the Commencement Date, and subject to paragraph 7 herein, the Second Lien Lenders collectively shall receive the following adequate protection (collectively, the "***Second Lien Adequate Protection***" and together with the First Lien Adequate Protection, the "***Adequate Protection***"):

(a)    <u>Replacement Liens</u>.  Subject to paragraph 18 herein to the extent of any diminution in value of the interests of the Second Lien Agent and the Second Lien Lenders in the Pre-Petition Second Lien Collateral, including, without limitation, the Cash Collateral, from and after the Commencement Date, the Second Lien Agent, for the benefit of itself and the other Second Lien Lenders, is hereby granted, subject to the terms and conditions set forth below, pursuant to sections 361, 363 and 364 of the Bankruptcy Code, replacement Liens upon all of the

DIP Collateral such adequate protection replacement liens, the "***Second Lien Adequate Protection Replacement Liens***" and together with the First Lien Adequate Protection Replacement Liens, the "***Adequate Protection Replacement Liens***").    The Second Lien Adequate Protection Replacement Liens on such Second Lien Adequate Protection Collateral shall be subject and subordinate only to (i) the DIP Liens, (ii) the Pre-Petition First Priority Liens, (iii) the First Lien Adequate Protection Replacement Liens, (iii) the Pre-Petition Second Priority Liens and (iv) to the extent applicable, the Permitted Prior Liens.

(b)    <u>Super-Priority Claims</u>.    To the extent of any diminution in value of the pre-petition interests of the Second Lien Lenders in the Pre-Petition Second Lien Collateral, the Second Lien Agent and the Second Lien Lenders are hereby granted allowed super-priority administrative claims (such adequate protection super-priority claims, the "***Second Lien Super-Priority Claims***" and together with the First Lien Super-Priority Claims, the "***Super-Priority Claims***"), pursuant to section 507(b) of the Bankruptcy Code, which Second Lien Super-Priority Claims shall have priority over all administrative expenses of the kind specified in, or ordered pursuant to, any provision of the Bankruptcy Code, including, without limitation, those specified in, or ordered pursuant to, Sections 105, 326, 327, 328, 330, 503(b), 507(a) and (b), 546(c), 726, 1113 and 1114 of the Bankruptcy Code or otherwise; <u>provided</u>, <u>however</u>, that the Second Lien Lenders shall not receive or retain any payments, property or other amounts in respect of the First Lien Super-Priority Claims unless and until (x) all DIP Obligations and all payments due under the Carve-Out have been indefeasibly paid in full in cash, (y) all credit commitments under the DIP Loan Documents have been irrevocably terminated and (z) all of the First Lien Credit Obligations have been indefeasibly paid in full in cash.    Subject to the relative priorities set forth above, the Second Lien Super-Priority Claims against each Debtor shall be against each Debtor

on a joint and several basis.  The Second Lien Super-Priority Claims shall be subject and subordinate only to the (i) DIP Super-Priority Claims, (ii) the First Lien Super-Priority Claims and (iii) the Carve-Out.

(c)    Reporting Requirements.  Concurrent with the Debtors' delivery of all reports and information to the Senior Noteholder Group and the Indenture Trustee pursuant to paragraph 4(d) above, the Debtors shall provide the Second Lien Lenders with a copy thereof.

6.    **Automatic Post-Petition Lien Perfection**.  This Final Order shall be sufficient and conclusive evidence of the validity, enforceability, perfection and priority of the DIP Liens and the Adequate Protection Replacement Liens without the necessity of (a) filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction or (b) taking any other action to validate or perfect the DIP Liens and the Adequate Protection Replacement Liens or to entitle the DIP Liens and the Adequate Protection Replacement Liens to the priorities granted herein. Notwithstanding the foregoing, each of the DIP Agent, the Indenture Trustee and the Second Lien Agent (solely with respect to the Adequate Protection Replacement Liens) may, each in its sole discretion, file financing statements, mortgages, security agreements, notices of Liens and other similar documents, and is hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so, and all such financing statements, mortgages, security agreements, notices and other agreements or documents shall be deemed to have been filed or recorded at the time and on the Commencement Date.  The applicable Debtors shall execute and deliver to the DIP Agent, the Indenture Trustee and the Second Lien Agent, as applicable, all such financing statements, mortgages, notices and other documents as such parties may reasonably request to evidence and confirm the contemplated priority of the DIP Liens and the

Adequate Protection Replacement Liens, as applicable, granted pursuant hereto. Without limiting the foregoing, each of the DIP Agent, the Indenture Trustee and the Second Lien Agent, each in its discretion, may file a photocopy of this Final Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which any Debtor has real or personal property, and in such event, the subject filing or recording officer shall be authorized to file or record such copy of this Final Order. Subject to the entry of the Final Order, any provision of any lease, loan document, easement, use agreement, proffer, covenant, license, contract, organizational document, or other instrument or agreement that requires the payment of any fees or obligations to any governmental entity or non-governmental entity in order for the Debtors to pledge, grant, mortgage, sell, assign, or otherwise transfer any fee or leasehold interest or the proceeds thereof or other Collateral, is and shall be deemed to be inconsistent with the provisions of the Bankruptcy Code, and shall have no force or effect with respect to the Liens on such leasehold interests or other applicable Collateral or the proceeds of any assignment and/or sale thereof by any Debtor, in favor of the DIP Lenders in accordance with the terms of the DIP Loan Documents and this Final Order. To the extent that the Indenture Trustee is the secured party under any account control agreements, listed as loss payee under any of the Debtors' insurance policies or is the secured party under any Pre-Petition Credit Document, the DIP Agent shall also be deemed to be the secured party under such account control agreements, loss payee under the Debtors' insurance policies and the secured party under each such Pre-Petition Credit Document, shall have all rights and powers attendant to that position (including rights of enforcement) and shall act in that capacity and distribute any proceeds recovered or received in accordance with the DIP Loan Documents and this Final Order. The Indenture Trustee shall serve as agent for the

DIP Agent for purposes of perfecting their respective Liens on all DIP Collateral that is of a type such that perfection of a Lien therein may be accomplished only by possession or control by a secured party.

      7.      **<u>Reservation of Certain Third Party Rights and Bar of Challenges and Claims</u>**.

      (a)      The Debtors' Stipulations shall be binding upon the Debtors in all circumstances.  The Debtors' Stipulations shall be binding upon each other party in interest, including the Committee and any trustee of the Debtors' estates appointed in these Cases, unless on or before April 30, 2012 (such time period shall be referred to as the "***Challenge Period***," and the date that is the next calendar day after the termination of the Challenge Period, in the event that no objection or challenge is raised during the Challenge Period, shall be referred to as the "***Challenge Period Termination Date***"), the Committee, any trustee of the Debtors' estates appointed in these Cases, or other party in interest other than the Debtors obtains the authority to commence and commences, prior to the Challenge Period Termination Date (subject, with respect to the Committee only, to the proviso immediately following clause (y) below), a contested matter or adversary proceeding (x) challenging or otherwise objecting to any part of the Debtors' Stipulations, or (y) against any or all of the Indenture Trustee and the Second Lien Agent and/or the other Pre-Petition Secured Parties challenging any aspect of the Pre-Petition Credit Obligations, Pre-Petition Liens or the actions or inactions of any of the Indenture Trustee and the Second Lien Agent or the other Pre-Petition Secured Parties arising out of or related to the Pre-Petition Credit Obligations, or Pre-Petition Liens, including any claim against the Indenture Trustee, the Second Lien Agent or any other Pre-Petition Secured Party in the nature of "lender liability" causes of action, setoff, avoidance, counterclaim or defense to the Pre-

Petition Credit Obligations (including but not limited to those under sections 506, 544, 547, 548, 549, 550 and/or 552 of the Bankruptcy Code (the objections, challenges, actions and claims referenced in clauses (x) and (y), collectively, the "*Claims and Defenses*"); provided, however, that the Committee only, shall have 30 days after the Challenge Period Termination Date to commence a contested matter or adversary proceeding challenging any claim against any or all of the Pre-Petition Secured Parties in the nature of a "lender liability" cause of action, setoff, counterclaim or defense to the Prepetition Obligations (including but not limited to those under Sections 544, 547, 548, 549, 550 and/or 553 of the Bankruptcy Code or by way of suit against any or all of the Pre-Petition Secured Parties); and (b) this Court rules in favor of the plaintiff in any such timely and properly commenced contested matter or adversary proceeding; provided, that as to the Debtors, for themselves and not their estates, all such Claims and Defenses are irrevocably waived and relinquished as of the Commencement Date. If no Claims and Defenses have been timely asserted in any such adversary proceeding or contested matter, then, upon the Challenge Period Termination Date, and for all purposes in these Cases and any Successor Case, (i) no payments made to the Indenture Trustee and the other Pre-Petition Secured Parties pursuant to, or authorized by, this Final Order, the Interim Order or the Interim Cash Collateral Order shall be subject to counterclaim, set-off, subordination, recharacterization, defense or avoidance, (ii) any and all such Claims and Defenses by any party in interest shall be deemed to be forever released, waived and barred, (iii) the Pre-Petition Credit Obligations shall be deemed to be an allowed claim, and (iv) the Debtors' Stipulations, including the release provisions therein, shall be binding on all creditors and parties in interest, including the Committee and any subsequent trustee of the Debtors' estates in these Cases or in any Successor Case. Notwithstanding the foregoing, to the extent any Claims and Defenses are timely asserted in any

such adversary proceeding or contested matter, (i) the Debtors' Stipulations and the other provisions in clauses (i) through (iv) in the immediately preceding sentence shall nonetheless remain binding and preclusive on any party in interest, including the Committee or any subsequent trustee of the Debtors' estates in these Cases or in any Successor Case from and after the Challenge Period Termination Date, except to the extent that such Debtors' Stipulations or the other provisions in clauses (i) through (iv) of the immediately preceding sentence were expressly challenged in such adversary proceeding or contested matter, and (ii) any portion of the Debtors' Stipulations or other provision in clauses (i) through (iv) in the immediately preceding sentence that is the subject of a timely filed Claim and Defense shall become binding and preclusive on the Committee (and any subsequent trustee of the Debtors' estates in these Cases or any Successor Case) and or any other party in interest to the extent set forth in any order of the Court resolving such Claim and Defense.  Nothing in this Final Order vests or confers on any person or entity, including the Committee, standing or authority to pursue any cause of action belonging to any or all of the Debtors or their estates, including any Claim and Defense or other claim against the DIP Agent, the DIP Lenders, the Indenture Trustee, the Senior Noteholder Group, the Second Lien Agent or any other Pre-Petition Secured Party, and the DIP Agent, the DIP Lenders, the Indenture Trustee, the Senior Noteholder Group, the Second Lien Agent and the other Pre-Petition Secured Parties reserve all rights to challenge and object to such standing or authority; provided, however, that the Committee shall be entitled to an emergency hearing, upon two business days' notice and at the earliest possible time permitted on the Court's calendar, to present, by oral motion or otherwise, its request for standing to pursue a cause of action belonging to any or all of the Debtors or their estates, including any Claim or Defense,

and, while such emergency hearing is pending, the expiration of the Challenge Period shall be tolled.

(b)    The Court may, after notice and a hearing, unwind any payments made to the Senior Noteholder Group in the event that any Claims or Defenses brought within the Challenge Period are found to have successfully challenged the validity, enforceability, extent, perfection or priority of any of the Indenture Trustee or the Senior Noteholder Group's claims and/or Liens.  For the avoidance of doubt, to the extent the Court unwinds any payments to the Senior Noteholder Group as set forth in the preceding sentence, then the Pre-Petition First Lien Obligations in respect of which such payments were made shall be reinstated in full force and effect and all guarantees and security in respect thereof shall be restored.

8.    **Carve-Out**.  Subject to the terms and conditions contained in this paragraph 8, each of the DIP Liens, DIP Super-Priority Claims, the Pre-Petition Liens, the Adequate Protection Replacement Liens and the Super-Priority Claims shall be subject and subordinate in all respects to payment of the Carve-Out (as defined below):

(a)    For purposes of this Final Order, "*Carve-Out*" means (i) all unpaid fees required to be paid in these Cases to the Clerk of the Court and to the U.S. Trustee under 28 U.S.C. § 1930 and 31 U.S.C. § 3717, whether arising prior to or after the delivery of the Carve-Out Trigger Notice (as defined below); (ii) all reasonable and documented unpaid fees, costs, disbursements and expenses (the "*Debtor Professional Fees*") of professionals retained by the Debtors in these Cases (collectively, the "*Debtors' Professionals*") that are incurred and earned prior to the first business day after the delivery by the DIP Agent of a Carve-Out Trigger Notice, are allowed by the Court under sections 328, 330 or 331 of the Bankruptcy Code or otherwise (whether allowed by the Bankruptcy Court prior to or after delivery of a Carve-Out Trigger

Notice) and remain unpaid after application of any retainers and any available funds remaining in the Debtors' estates for such creditors; (iii) all reasonable and documented unpaid fees and expenses (the "**Committee Professional Fees**" and together with the Debtor Professional Fees, the "**Professional Fees**") of professionals retained by the Committee in these Cases (collectively, the "**Committee's Professionals**") and all reasonable expenses of any member of the Committee that are incurred and earned prior to the first business day after the delivery by the DIP Agent of a Carve-Out Trigger Notice, are allowed by the Court under sections 330, 331 or 503(b) of the Bankruptcy Code or otherwise (whether allowed by the Bankruptcy Court prior to or after delivery of a Carve-Out Trigger Notice) and remain unpaid after application of any available funds remaining in the Debtors' estates for such creditors; (iv) all reasonable and documented unpaid fees, costs, disbursements and expenses of the Debtors' Professionals and Committee's Professionals that are incurred and earned on or after the first business day after the delivery by the Senior Noteholder Group of a Carve-Out Trigger Notice, that are allowed by the Court under sections 328, 330 or 331 of the Bankruptcy Code or otherwise and remain unpaid after application of any retainers and any available funds remaining in the Debtors' estates for such creditors and in an aggregate amount not to exceed $1.9 million (the "**Carve-Out Cap**") (plus all unpaid fees, costs, disbursements and expenses of the Debtors' Professionals and Committee's Professionals allowed by this Court at any time that were incurred on or prior to the first business day following the delivery of the Carve-Out Trigger Notice); and (v) in the event of a conversion of the Cases to cases under chapter 7 of the Bankruptcy Code, the payment of fees and expenses incurred by a trustee and any professional retained by such trustee in an aggregate amount not to exceed $200,000 (clauses (i) through (v), collectively, the "**Carve-Out**"); provided, however, that immediately upon either (A) the delivery of a Carve-Out Trigger Notice or (B) termination of the

DIP Facility and the Debtors' authority to use Cash Collateral, but only if such termination occurs prior to the effective date of any plan of liquidation, the Debtors shall immediately fund into a segregated account established by the Debtors (the "***Carve-Out Account***") an amount equal to the aggregate amount accrued under the Carve-Out prior to the delivery of the Carve-Out Trigger Notice, plus the amount of the Carve-Out Cap.  If there are insufficient funds on the date the Carve-Out Trigger Notice is delivered to fund the full amount of the Carve-Out, including the Carve-Out Cap, into the Carve-Out Account, any additional cash proceeds thereafter received by the Debtors, from whatever source, shall be transferred by the Debtors into the Carve-Out Account prior to making any distributions to creditors.  All funds in the Carve-Out Account shall be used first to pay the obligations set forth in clauses (i) through (iii) of the definition of Carve Out in subsection (a), above, and then, to pay the obligations set forth in clause (iv) of the definition of Carve Out set forth in subsection (a), above.  All amounts deposited in the Carve-Out Account shall continue to be subject to the DIP Liens, the Pre-Petition Liens and Adequate Protection Replacement Liens such that, upon final payment of all allowed amounts due and owing under the Carve-Out, including the Carve-Out Cap, as determined by further order of the Court, any funds remaining in the Carve-Out Account shall be remitted to the Debtors and governed by the terms of this Final Order.  Notwithstanding anything to the contrary in this Final Order, all liens and claims granted pursuant to the Final Order, as well as all liens and claims granted pursuant to any Pre-Petition Credit Obligations, shall be subject to the Carve-Out.  The term "***Carve-Out Trigger Notice***" shall mean a written notice delivered by the DIP Agent or its counsel to the Debtors' lead counsel, the U.S. Trustee, counsel to the Second Lien Lenders and lead counsel to the Committee appointed in these Cases, which

notice may be delivered at any time following the occurrence and during the continuation of any Event of Default, expressly stating that the Carve-Out is invoked.

(b)    Any payments actually made pursuant to Bankruptcy Code sections 327, 328, 330, 331, 503 or 1103 or otherwise to Debtors' Professionals or Committee's Professionals shall (i) in the case of the Debtors' Professionals only, not be paid from the proceeds of any DIP Collateral, Adequate Protection Collateral, Pre-Petition Collateral or Cash Collateral until such time as all retainers, if any, held by such Debtors' Professionals or the Committee's Professionals have been reduced to zero and (ii) in the case of any payments made on account of any fees and expenses described in clause (iv) of the definition of Carve-Out, reduce the applicable Carve-Out Cap on a dollar-for-dollar basis.  So long as no Carve-Out Trigger Notice has been delivered, the Debtors shall be permitted to pay the Professional Fees, allowed and payable under 11 U.S.C. 328, 330 or 331, as the same may be due and payable.  Any compensation and expenses previously paid, or accrued but unpaid, prior to the delivery of the Carve-Out Trigger Notice and any fees, expenses, indemnities or other amounts paid to the DIP Secured Parties, the Pre-Petition Secured Parties or such party's respective attorneys and agents under the Pre-Petition Credit Obligations or otherwise, shall not reduce the Carve-Out Cap.

(c)    So long as no Carve-Out Trigger Notice has been delivered to the Debtors, the Debtors are authorized to use advances under the DIP Facility, in accordance with and limited to the amounts set forth on the Approved Budget, on a cumulative basis by Debtor Professional or Committee Professional, as applicable, to pay such compensation and expense reimbursements of the Debtors' Professionals and the Committee's Professionals as the same may be due and payable pursuant to any order permitting monthly interim compensation or other order allowing fees on an interim or final basis.

(d)    No portion of the Carve-Out, DIP Collateral, Pre-Petition Collateral, Cash Collateral or any proceeds of the DIP Facility may be used for the payment of the fees and expenses of any person incurred challenging, or in relation to the challenge of, (i) the Liens or claims of any or all of the DIP Agent and/or the DIP Lenders, the Pre-Petition Liens of the Indenture Trustee the Second Lien Agent, and/or the Pre-Petition Secured Parties or the initiation or prosecution of any claim or cause of action (including any Claims and Defenses) against any or all of the DIP Agent or the DIP Lenders, and their respective attorneys and advisors, including any claim under Chapter 5 of the Bankruptcy Code or (ii) any claims or causes of actions (including any Claims and Defenses and any claims or causes of action under Chapter 5 of the Bankruptcy Code) against any or all of the Indenture Trustee, the Senior Noteholder Group, the Second Lien Agent or the other Pre-Petition Secured Parties, their respective affiliates, agents, attorneys, financial advisors, consultants, officers, directors and employees, including formal discovery proceedings in anticipation thereof, and/or challenging any Lien or claim of any or all of the Indenture Trustee, the Senior Noteholder Group, the Second Lien Agent or the other Pre-Petition Secured Parties, or asserting any other lender liability or other claim or cause of action against any of the Indenture Trustee, the Senior Noteholder Group, the Second Lien Agent or the other Pre-Petition Secured Parties.  The foregoing notwithstanding, no more than $50,000, in the aggregate, of the amounts set forth in the Approved Budget, the Carve-Out, DIP Collateral, Cash Collateral or any proceeds of the DIP Facility may be used by the Committee, or any representative of the estates, to investigate and file a motion for standing with respect thereto, but not prosecute or prepare to prosecute any challenge to, the claims and/or liens of the Indenture Trustee, the Senior Noteholder Group, the Second Lien Agent or the other Pre-Petition Secured Parties under the Pre-Petition Credit Documents.

(e)    Furthermore, none of the Carve-Out, DIP Collateral, Pre-Petition Collateral, Cash Collateral or any proceeds of the DIP Facility shall be used to prevent, hinder or delay the DIP Lenders or the DIP Agent from enforcing or realizing upon the DIP Collateral once a Default or Event of Default has been determined by the Court to have occurred and to be continuing under the DIP Loan Documents or this Final Order.

(f)    Nothing herein shall be construed as consent to the allowance of any Debtor Professional Fees, Committee Professional Fees or the professional fees or expenses of any unofficial committee or any other party in interest, or shall affect the right of the DIP Agent, any DIP Lender, the U.S. Trustee or the other Pre-Petition Secured Parties to object to the allowance and payment of such fees and expenses.

(g)    The DIP Agent, the DIP Lenders, the Indenture Trustee, the Senior Noteholder Group, the Second Lien Agent and the other Pre-Petition Secured Parties shall not be responsible for the direct payment or reimbursement of any Debtor Professional Fees or Committee Professional Fees incurred in these Cases or any Successor Case.  Nothing in this Final Order or otherwise shall be construed (i) to obligate the DIP Agent, the DIP Lenders, the Indenture Trustee, the Senior Noteholder Group, the Second Lien Agent and the other Pre-Petition Secured Parties in any way to pay compensation or to reimburse expenses of any of the Debtors' Professionals or the Committee's Professionals or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement; (ii) to increase the Carve-Out if the actual Debtor Professional Fees or Committee Professional Fees are higher than reflected in the Approved Budget; or (iii) as consent to the allowance of any Professional Fees.  Any funding of the Carve-Out shall be added to and made a part of the DIP Obligations and secured by the DIP

Collateral and otherwise entitled to the protections granted under this Final Order, the DIP Loan Documents, the Bankruptcy Code and applicable law.

9.    **Credit Bid**.    (a)    Subject to paragraph 7(a) hereof and the last sentence of paragraph 2(h) hereof, the DIP Agent shall have the unqualified right to credit bid the DIP Obligations and the Roll Up Notes under or pursuant to (i) section 363 of the Bankruptcy Code, (ii) a plan of reorganization or plan of liquidation under section 1129 of the Bankruptcy Code, or (iii) a sale or disposition by a chapter 7 trustee for any of the Debtors under section 725 of the Bankruptcy Code.

(b)    Provided that the DIP Obligations and the Roll Up Notes have been repaid in full in cash and the DIP Credit Agreement terminated, or will be repaid in full in cash and terminated pursuant to the terms of such sale, then following the later of (i) the Challenge Period Termination Date or (ii) if, prior to the Challenge Period Termination Date, the Committee timely asserts any Claims and Defenses in any adversary proceeding or contested matter, the date on which the Pre-Petition First Priority Liens and First Lien Obligations are determined by final order to be valid, binding and enforceable, the Indenture Trustee shall have the unqualified right to credit bid up to the full amount of any First Lien Obligations (other than the Roll Up Notes) in any sale of the Pre-Petition Collateral, under or pursuant to (i) section 363 of the Bankruptcy Code, (ii) a plan of reorganization or plan of liquidation under section 1129 of the Bankruptcy Code, or (iii) a sale or disposition by a chapter 7 trustee for any of the Debtors under section 725 of the Bankruptcy Code.  The Debtors, on behalf of themselves but not on behalf of their estates, stipulate and agree that any sale of all or part of the Collateral that does not include an unqualified right to credit bid up to the full amount of the value of Pre-Petition

First Lien Credit Obligations would mean that the Senior Noteholders will not receive the indubitable equivalent of their claims and interests.

10.     **Waiver of Section 506(c) Claims**.  As a further condition of the DIP Facility, any obligation of the DIP Lenders to make credit extensions pursuant to the DIP Loan Documents (and their consent to the payment of the Carve-Out to the extent provided herein) and the consent of the Senior Note Holder Group and non-opposition of the Second Lien Lenders to the Debtors' use of Cash Collateral as provided herein, no costs or expenses of administration of the Cases or any Successor Case shall be charged against or recovered from or against any or all of the DIP Lenders, the Pre-Petition Secured Parties, the DIP Collateral, the Pre-Petition Collateral, and the Cash Collateral pursuant to section 506(c) of the Bankruptcy Code or otherwise, without the prior written consent of the DIP Agent or the Senior Noteholder Group, as the case may be, and no such consent shall be implied from any other action, inaction, or acquiescence of any or all of the DIP Lenders and the Pre-Secured Parties.

11.     [**Reserved**].

12.     **Protection of DIP Lenders' Rights**.

(a)     Unless the DIP Agent and the Required Lenders shall have provided their prior written consent or all DIP Obligations and the Roll Up Notes have been indefeasibly paid in full in cash and the DIP Credit Agreement terminated, there shall not be entered in these proceedings or in any Successor Case any order which authorizes (i) the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other lien on all or any portion of the DIP Collateral or that is entitled to administrative priority status, in each case which is superior to or *pari passu* with the DIP Liens, DIP Super-Priority Claims and other DIP Protections granted pursuant to this Final Order; or (ii) the use of DIP

proceeds for any purpose other than as permitted in accordance with the Approved Budget, the DIP Loan Documents and this Final Order.

(b)    The Debtors (and/or their legal and financial advisors in the case of clauses (ii) through (iv) below) will (i) maintain books, records and accounts to the extent and as required by the DIP Loan Documents, (ii) reasonably cooperate, consult with, and provide to the DIP Agent and the DIP Lenders all such information as required or allowed under the DIP Loan Documents or the provisions of this Final Order, (iii) permit representatives of the DIP Agent and the Pre-Petition Secured Parties such rights to visit and inspect any of the Debtors' respective properties, to examine and make abstracts or copies from any of the Debtors' respective books and records, to conduct a collateral audit and analysis of their respective inventory and accounts, to tour the Debtors' business premises and other properties, and to discuss, and provide advice with respect to, their respective affairs, finances, properties, business operations and accounts with their respective officers, employees and independent public accountants as and to the extent required by the DIP Loan Documents, and (iv) permit the DIP Agent and the Senior Noteholder Group and their respective representatives to consult with the Debtors' management and advisors on matters concerning the general status of the Debtors' businesses, financial condition and operations.

13.    **Proceeds of Subsequent Financing**.    Without limiting the provisions and protections of paragraph 12 above, if at any time prior to the indefeasible payment in full in cash of all DIP Obligations and the Roll Up Notes and the termination of the DIP Loans, the Debtors' estates, any trustee, any examiner with enlarged powers or any responsible officer subsequently appointed shall obtain credit or incur debt pursuant to sections 364(b), 364(c), 364(d) or any other provision of the Bankruptcy Code in violation of the DIP Loan Documents or this Final

Order, then all of the cash proceeds derived from such credit or debt and all Cash Collateral shall immediately be turned over to the DIP Agent until indefeasible payment in full in cash of the DIP Obligations and the Roll Up Notes.

14.    **Disposition of DIP Collateral**.    The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral without the prior written consent of the DIP Agent and the Required Lenders (and no such consent shall be implied from any other action, inaction or acquiescence by any DIP Secured Party or any order of this Court), except for (a) as permitted in the DIP Loan Documents and this Final Order and (b) approved by the Court to the extent required under applicable bankruptcy law.

15.    **Events of Default**. The following shall constitute an event of default under this Final Order, unless waived in writing by the DIP Agent and the Required Lenders under the DIP Loan Documents (the "***Events of Default***"):

(a)    The occurrence of an "Event of Default" under the DIP Credit Agreement, as set forth therein.

(b)    The Debtors propose or support any plan of reorganization or sale of all or substantially all of the Debtors' assets or entry of any confirmation order or sale order that is not conditioned upon the indefeasible payment in full in cash, on the effective date of such plan of reorganization or such sale, of all DIP Obligations and the Roll Up Notes.

(c)    Any other breach or default by any of the Debtors of the terms and provisions of this Final Order.

16.    **Rights and Remedies Upon Event of Default**.

(a)    Immediately upon the occurrence and during the continuation of an Event of Default, the DIP Agent may, and at the written direction of the Required Lenders shall, (i)(1)

declare all DIP Obligations and Roll Up Notes to be immediately due and payable, (2) declare the termination, reduction or restriction of any further commitment to extend credit to the Debtors, to the extent any such commitment remains, and (3) terminate the DIP Facility and any other DIP Loan Documents as to any future liability or obligation of the DIP Agent and the DIP Lenders, but without affecting any of the DIP Obligations, the Roll Up Notes or the DIP Liens securing the DIP Obligations; and (ii) declare a termination, reduction or restriction on the ability of the Debtors to use any Cash Collateral (any such declaration shall be made in writing to the Debtors, the Committee and the U.S. Trustee, and shall be referred to herein as a "***Termination Declaration***" and the date which is the earliest to occur of any such Termination Declaration being herein referred to as the "***Termination Declaration Date***").

(b)      In addition to the remedies described above and other customary remedies, on or after the Termination Declaration Date, the DIP Lenders or DIP Agent may file with the Bankruptcy Court and serve on the Debtors, the Committee and the U.S. Trustee, a notice of the occurrence of the Event of Default along with a proposed order (the "***Default Order***") providing that the DIP Lenders and DIP Agent have relief from the automatic stay and may foreclose on all or any portion of the DIP Collateral, collect accounts receivable and apply the proceeds thereof to the DIP Obligations and the Roll Up Notes, occupy the Debtors' premises to sell or otherwise dispose of the DIP Collateral or otherwise exercise remedies against the DIP Collateral permitted by applicable non-bankruptcy law.   Subject to the immediately following proviso, the Bankruptcy Court will enter the Default Order following the expiration of seven (7) days from the date that the DIP Lenders or DIP Agent file the Default Order with the Court; provided, however, that during such seven (7) day period, the Debtors and the Committee shall be entitled to an emergency hearing before the Bankruptcy Court for the sole purpose of contesting whether

48

Case 1-12-40783-cec    Doc 311    Filed 03/30/12    Entered 03/30/12 13:58:48

an Event of Default has occurred. Unless the Court at such hearing determines that an Event of Default has not occurred and is not continuing, the Default Order shall be entered and the automatic stay, as to the DIP Lenders and DIP Agent, shall terminate.

(c)     All proceeds realized in connection with the exercise of the rights and remedies of the DIP Lenders shall be turned over to the DIP Agent for application to the DIP Obligations and the Roll Up Notes under, and in accordance with the provisions of, the DIP Loan Documents and this Final Order until indefeasible payment in full in cash of the DIP Obligations and the Roll Up Notes.

(d)     Notwithstanding anything contained herein to the contrary, and without limiting any other rights or remedies of the DIP Agent or the other DIP Lenders contained in this Final Order or the DIP Loan Documents, or otherwise available at law or in equity, upon reasonable prior written notice to the Debtors and any landlord, lienholder, licensor or other third party owner of any leased or licensed premises or intellectual property that an Event of Default has occurred and is continuing, the DIP Agent (i) may, unless otherwise provided in any separate agreement by and between the applicable landlord or licensor and the DIP Agent, enter upon any leased or licensed premises of the Debtors for the purpose of exercising any remedy with respect to DIP Collateral located thereon and (ii) shall be entitled to all of the Debtors' rights and privileges as lessee or licensee under the applicable license and to use any and all trademarks, trade names, copyrights, licenses, patents or any other similar assets of the Debtors, which are owned by or subject to a Lien of any third party and which are used by Debtors in their businesses, in all cases without interference from lienholders or licensors thereunder, provided, however, that the DIP Agent, on behalf of the DIP Lenders, shall pay only rent and additional rent, fees, royalties or other obligations of the Debtors that first arise after the written notice

referenced above from the DIP Agent and that are payable during the period of such occupancy or use by such DIP Agent calculated on a *per diem* basis. Nothing herein shall require the Debtors, the DIP Agent or the other DIP Lenders to assume any lease or license under section 365(a) of the Bankruptcy Code as a precondition to the rights afforded to the DIP Agent and the other DIP Lenders in this paragraph 16(d).

(e)    The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified pursuant to the terms of this Final Order and the DIP Loan Documents as necessary to (i) permit the Debtors to grant the Adequate Protection Replacement Liens and the DIP Liens and to incur all liabilities and obligations to the Senior Noteholder Group, the Pre-Petition Secured Parties, the DIP Lenders under the DIP Loan Documents, the DIP Facility and this Final Order, (ii) authorize the DIP Lenders and the other Pre-Petition Secured Parties to retain and apply payments hereunder, and (iii) as otherwise necessary to implement and effectuate the provisions of this Final Order.

17.    **Preservation of Rights Granted under the Final Order**.

(a)    No Non-Consensual Modification or Extension of Final Order. Unless all DIP Obligations shall have been indefeasibly paid in full in cash, the Debtors shall not seek, and it shall constitute an Event of Default, if there is entered (i) an order amending, supplementing, extending or otherwise modifying this Final Order or (ii) an order converting or dismissing any of the Cases, in each case, without the prior written consent of the DIP Agent, which consent shall not be implied by any other action, inaction or acquiescence.

(b)    Dismissal. If any order dismissing any of the Cases under section 1112 of the Bankruptcy Code is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) to the fullest extent permitted by law that (i) the

DIP Protections and the Adequate Protection shall continue in full force and effect and shall maintain their priorities as provided in this Final Order until all DIP Obligations and the Roll Up Notes have been indefeasibly paid in full in cash and all Adequate Protection has been indefeasibly paid in full in cash or otherwise satisfied in full (and that all DIP Protections and the Adequate Protection shall, notwithstanding such dismissal, remain binding on all parties in interest), and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing such DIP Protections and the Adequate Protection.

(c)    Modification of Final Order.  Based on the findings set forth in this Final Order and in accordance with section 364(e) of the Bankruptcy Code, which is applicable to the DIP Facility contemplated by this Final Order, in the event any or all of the provisions of this Final Order are hereafter reversed, modified, vacated or stayed by a subsequent order of this Court or any other court, the DIP Agent, the DIP Lenders, the Indenture Trustee, the Senior Noteholder Group, the Second Lien Agent and the other Pre-Petition Secured Parties shall be entitled to the protections provided in section 364(e) of the Bankruptcy Code, and no such reversal, modification, vacatur or stay shall affect (i) the validity, priority or enforceability of any DIP Protections and the Adequate Protection granted or incurred prior to the actual receipt of written notice by the DIP Agent or the Senior Noteholder Group, as the case may be, of the effective date of such reversal, modification, vacatur or stay or (ii) the validity or enforceability of any lien or priority authorized or created hereby or pursuant to the DIP Loan Documents with respect to any DIP Obligations including the Roll Up Notes and the Adequate Protection. Notwithstanding any such reversal, modification, vacatur or stay, any use of Cash Collateral or any DIP Obligations including the Roll Up Notes or Adequate Protection incurred or granted by the Debtors prior to the actual receipt of written notice by the DIP Agent or the Senior

Noteholder Group, as applicable, of the effective date of such reversal, modification, vacatur or stay shall be governed in all respects by the original provisions of this Final Order, and the DIP Lenders and the Pre-Petition Secured Parties shall be entitled to all of the DIP Protections and the Adequate Protection, as the case may be, and all other rights, remedies, Liens, priorities, privileges, protections and benefits granted in section 364(e) of the Bankruptcy Code, this Final Order and pursuant to the DIP Loan Documents with respect to all uses of Cash Collateral and all DIP Obligations, including the Roll Up Notes and Adequate Protection.

(d)    <u>Survival of Final Order</u>.  The provisions of this Final Order, the DIP Loan Documents, any actions taken pursuant hereto or thereto, and all of the DIP Protections, the Adequate Protection, and all other rights, remedies, liens, priorities, privileges, protections and benefits granted to any or all of the DIP Agent, the DIP Lenders, the Indenture Trustee, the Senior Noteholder Group, the Second Lien Agent and the other Pre-Petition Secured Parties shall survive, and shall not be modified, impaired or discharged by, the entry of any order confirming any plan of reorganization in any Case, converting any Case to a case under chapter 7, dismissing any Case, withdrawal of the reference as to any Case or any Successor Case or providing for abstention from handling or retaining of jurisdiction of any Case in this Court, or terminating the joint administration of these Cases or by any other act or omission.  The terms and provisions of this Final Order, including all of the DIP Protections, Adequate Protection and all other rights, remedies, liens, priorities, privileges, protections and benefits granted to any or all of the DIP Agent, the DIP Lenders, the Indenture Trustee, the Senior Noteholder Group, the Second Lien Agent and the other Pre-Petition Secured Parties, shall continue in full force and effect notwithstanding the entry of any such order, and such DIP Protections and Adequate

Protection shall continue in these proceedings and in any Successor Case, and shall maintain their respective priorities as provided by this Final Order.

      18.    **Excluded Section 1110 Assets**.

      (a)    <u>No Waiver of Section 1110 Beneficiary Rights</u>.   Nothing in this Final Order (i) shall constitute a waiver, forbearance or adjudication of the rights of any secured party, lessor or vendor, or of any trustee, agent or controlling party for any such entity (including, without limitation, any servicer or beneficial owner of any lessor and including any secured party, lessor or vendor under any aircraft lease or mortgage) (in each case, an "***1110 Beneficiary***") under section 1110 of the Bankruptcy Code; or (ii) shall prejudice, limit or otherwise affect any rights of any 1110 Beneficiary or other entity under section 1110 of the Bankruptcy Code, all of which rights are expressly preserved.

      (b)    <u>Limitation on Liens in Excluded Section 1110 Assets</u>.   Notwithstanding any provision to the contrary in this Final Order, to the extent prohibited or restricted under any Section 1110 Agreement (as defined below), the DIP Lenders and the other Pre-Petition Secured Parties (I) shall not by this Final Order be granted liens on, or security interests in,  (i) any of the Excluded Section 1110 Assets (as defined below), (ii) any lease of, or any Debtor's leasehold interest in, the Excluded Section 1110 Assets, or (iii) any other property or Section 1110 Agreement which is subject to the rights of an 1110 Beneficiary under section 1110 of the Bankruptcy Code;  (II) shall not be listed as a loss payee, as an additional insured or contract party on any insurance policy which the Debtors are obligated to any 1110 Beneficiary to obtain or maintain on or with respect to any Excluded Section 1110 Assets, except to the extent that the Indenture Trustee was so listed as of the Commencement Date; (III) shall not, by virtue of this Final Order, be entitled to exercise, assert or otherwise have the benefits of any rights or interests

of any Debtor under any lease of the Excluded Section 1110 Assets or property described in clause (I) of this paragraph, including rights, or interests in, or to any sums payable to, any Debtor under any lease of the Excluded Section 1110 Assets or property described in clause (I) and rights or interests in or to any property held under such lease; (IV) shall not be given, and the Debtors likewise shall not place, placards or other indicia of security interests or liens in or on any Excluded Section 1110 Assets or property described in clause (I) above in favor of the DIP Agent, the Indenture Trustee, the Senior Noteholder Group or the Second Lien Agent; and (V) to the extent that any liens are granted hereunder in any Excluded Section 1110 Assets or Section 1110 Agreements, such liens shall be "silent" liens such that neither the DIP Agent, the DIP Lenders, nor the Senior Noteholder Group shall have the right to exercise any remedies with respect thereto until the obligations under the relevant Section 1110 Agreements have been satisfied and paid in full; provided, however, that the proceeds, if any, received by any Debtor on account of any Excluded Section 1110 Asset shall be subject to the DIP Liens and the Adequate Protection Replacement Liens.

(c)    The term "Section 1110 Agreement" shall mean any agreement related to the Excluded Section 1110 Assets, including, without limitation, security agreements, mortgages, trusts, leases, conditional sale agreements or other instruments applicable to such Excluded Section 1110 Assets.

(d)    The term "*Excluded Section 1110 Asset*" shall mean any interest of the Debtors in (A) any equipment described in section 1110(a)(3) of the Bankruptcy Code and any substitutions, renewals and replacements thereof, and any improvements, accessions and accumulations incident thereto, (B) any other asset with respect to which the granting of any lien would cause a default, directly or indirectly, of any Section 1110 Agreement and (C) any deposit

or reserve delivered by a Debtor to a Section 1110 Beneficiary in connection with the purchase, finance or lease of an Excluded Section 1110 Asset, to the extent that there is a restriction or prohibition in the related Section 1110 Agreement on the granting of any liens or assignments; provided that the DIP Liens shall attach automatically to any reversionary or residual interest any Debtor may have in such deposit or reserve upon the satisfaction of the obligations secured thereby.

      19.    **Other Rights and Obligations**.

      (a)    <u>Expenses</u>.  The Debtors will pay all reasonable expenses incurred by the DIP Agent, the DIP Lenders and the Senior Noteholder Group, (including the reasonable fees and disbursements of all counsel for the DIP Agent, the DIP Lenders and any internal or third-party appraisers, consultants, financial advisors, and auditors advising the DIP Lenders) and the fees of Houlihan Lokey Capital, Inc. ("***Houlihan***") in cash, in an amount equal to $150,000 per month, which shall constitute its Monthly Fee (as defined in Houlihan's January 20, 2012 letter agreement and notwithstanding any language therein providing for the reduction of such Monthly Fee), and in connection with the preparation, execution, delivery, administration and enforcement of the DIP Loan Documents, the First Lien Loan Documents, the Interim Cash Collateral Order, the Interim Order, this Final Order and any other agreements, instruments, pleadings or other documents prepared or reviewed in connection with any of the foregoing, without regard to the amounts set forth with respect thereto in the Approved Budget, whether or not any or all of the transactions contemplated hereby or by the DIP Loan Documents are consummated.  The Debtors will also pay monthly as an administrative expense and adequate protection to the Senior Noteholders all reasonable fees and expenses incurred by counsel to the Indenture Trustee; <u>provided</u>, <u>that</u>, the amount payable monthly shall be limited to $30,000 with

respect to March 2012 and (ii) $20,000 per month thereafter, which amounts shall be cumulative; and _further_, _provided_, _that_, such payments shall be without prejudice to all rights of the Indenture Trustee, including the right to file claims against the Debtors for all fees and expenses incurred in excess of such limitation.  Payment of all such fees set forth in this paragraph 19 shall not be subject to allowance by this Court.  Professionals for the DIP Agent, the DIP Lenders, the Senior Noteholder Group and the Indenture Trustee (collectively, including Houlihan, the "***Lender Professionals***") shall not be required to comply with the U.S. Trustee fee guidelines but the Lender Professionals (other than Houlihan with respect to its monthly fee) shall submit copies of invoices to the U.S. Trustee, counsel for the Committee, counsel for the Second Lien Lenders, counsel to the Senior Noteholder Group (in the case of invoices of counsel to the Indenture Trustee) and such other parties as the Court may direct.  If the Debtors, U.S. Trustee or the Committee objects to the reasonableness of the fees and expenses of any Lender Professional and cannot resolve such objection within ten (10) days of receipt of such invoices, the objecting party shall file with the Court and serve on such Lender Professional an objection (the "***Fee Objection***") limited to the issue of reasonableness of such fees and expenses.  After expiration of such ten (10) day period, the Debtors shall timely pay in accordance with the terms and conditions of this Final Order the invoiced fees and expenses of any Lender Professional, including the undisputed fees, costs and expenses reflected on any invoice to which a Fee Objection has been timely filed.

       (b)    <u>Binding Effect</u>.  Subject to paragraph 7 above, the provisions of this Final Order, including all findings herein, and the DIP Loan Documents shall be binding upon all parties in interest in these Cases, including the DIP Lenders, the Pre-Petition Secured Parties, the Committee and the Debtors and their respective successors and assigns (including any chapter 7

or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, any examiner appointed pursuant to section 1104 of the Bankruptcy Code or any other fiduciary or responsible person appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors), whether in any of the Cases, in any Successor Case, or upon dismissal of any such Case or Successor Case; provided, however, that the DIP Lenders and the Senior Noteholder Group shall have no obligation to permit the use of Cash Collateral or to extend any financing to any chapter 7 or chapter 11 trustee or other responsible person appointed for the estates of the Debtors in any Case or Successor Case.

(c)     No Waiver.  Neither the failure of the Senior Noteholder Group or the Pre-Petition Secured Parties to seek relief or otherwise exercise their rights and remedies under this Final Order, the Pre-Petition Credit Documents or otherwise (or any delay in seeking or exercising same), nor the failure of the DIP Agent or the DIP Lenders to seek relief or otherwise exercise their respective rights and remedies under this Final Order, the DIP Loan Documents or otherwise (or any delay in seeking or exercising same), shall constitute a waiver of any of such parties' rights hereunder, thereunder, or otherwise.  Except as expressly provided herein, nothing contained in this Final Order (including the authorization of the use of any Cash Collateral) shall impair or modify any rights, claims or defenses available in law or equity to the Senior Noteholder Group or any other Pre-Petition Secured Party, the DIP Agent or any DIP Lender, to assert rights of setoff or other rights with respect thereto as permitted by law (or the right of a Debtor to contest such assertion).  Except as prohibited by this Final Order, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair, the ability of the Senior Noteholder Group, the Second Lien Agent (subject to that certain Intercreditor Agreement, dated as of August 13, 2009, by and among Holdings, the

Guarantors, the Indenture Trustee and the Second Lien Collateral Agent (as defined in the Intercreditor Agreement) (the "***Intercreditor Agreement***")), the Second Lien Lenders (subject to the Intercreditor Agreement), the DIP Agent or the DIP Lenders under the Bankruptcy Code or under non-bankruptcy law to (i) request conversion of the Cases to cases under Chapter 7, dismissal of the Cases, or the appointment of a trustee in the Cases, (ii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, any chapter 11 plan or plans with respect to any of the Debtors, or (iii) exercise any of the rights, claims or privileges (whether legal, equitable or otherwise) of the DIP Agent, the DIP Lenders, the Senior Noteholder Group, Second Lien Agent or Second Lien Lenders, respectively.  Except to the extent otherwise expressly provided in this Final Order, neither the commencement of the Cases nor the entry of this Final Order shall limit or otherwise modify the rights and remedies of the Pre-Petition Secured Parties with respect to non-Debtor entities or their respective assets, whether such rights and remedies arise under the Pre-Petition Credit Documents, applicable law, or equity.

(d)    <u>No Third Party Rights</u>.  Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.  In determining to make any loan (whether under the DIP Credit Agreement or otherwise) or to permit the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Final Order or the DIP Loan Documents, the DIP Agent, the DIP Lenders, the Senior Noteholder Group and the other Pre-Petition Secured Parties shall not (i) be deemed to be in control of the operations of the Debtors, or (ii) owe any fiduciary duty to the Debtors, their respective creditors, shareholders or estates.

(e)    <u>Setoff or Recoupment of the United States</u>.  Nothing herein shall impair any rights of setoff or recoupment of the United States, subject to any defenses the Debtors may have in respect thereof.

(f)    <u>Trust Funds</u>.  The Cash Collateral shall not include and the DIP Liens and the Adequate Protection Replacement Liens shall not attach to any trust funds including, without limitation, passenger inspection user fees, passenger security fees, or passenger facility charges.

(g)    <u>No Marshaling</u>.  Except as provided in the DIP Credit Agreement and the DIP Loan Documents, the Debtors shall not attempt to subject the DIP Agent, the DIP Lenders or the Pre-Petition Secured Parties to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Collateral, as applicable.

(h)    <u>Section 507(b) Reservation</u>.  Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to any of the Pre-Petition Secured Parties hereunder is insufficient to compensate for any diminution in value of their respective interests in the Pre-Petition Collateral during the Cases or any Successor Cases.  Nothing contained herein shall be deemed a finding by the Court, or an acknowledgment by the Pre-Petition Secured Parties that the adequate protection granted herein does in fact adequately protect the Pre-Petition Secured Parties against any diminution in value of their respective interests in the Pre-Petition Collateral (including Cash Collateral).

(i)    <u>Amendments</u>.  The Debtors are authorized and empowered, without further notice and hearing or approval of this Court, to amend, modify, supplement or waive any provision of the DIP Loan Documents in accordance with the provisions thereof, unless such amendment, modification, supplement or waiver (i) increases the interest rate (other than as a result of the imposition of the default rate), (ii) increases the aggregate lending commitments of

all of the DIP Lenders in respect of the DIP Facility, (iii) changes the Final Maturity Date, or (iv) adds or amends (in any respect unfavorable to the Debtors) any Event of Default.  No waiver, modification, or amendment of any of the provisions hereof shall be effective unless set forth in writing, signed by on behalf of all the Debtors and the DIP Agent (after having obtained the requisite approval required under the DIP Loan Documents) and, except as provided herein, approved by this Court.

(j)    <u>Inconsistency</u>.  In the event of any inconsistency between the terms and conditions of the DIP Loan Documents and of this Final Order, the provisions of this Final Order shall govern and control.  In the event of any inconsistency between the terms and conditions of the Interim Cash Collateral Order the Interim Order and of this Final Order, the provisions of this Final Order shall govern and control.

(k)    <u>Enforceability</u>.  This Final Order shall constitute findings of fact and conclusions of law pursuant to the Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Commencement Date immediately upon execution hereof. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 or 9024 or any other Bankruptcy Rule or Local Rule or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry, and there shall be no stay of execution or effectiveness of this Final Order.

(l)    <u>Headings</u>.  Paragraph headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Final Order.

20.    **Reservation of Rights of Committee and Members of the Committee**. Nothing in this Final Order shall waive, limit, or modify the rights of, nor shall the doctrines of res

judicata, collateral estoppel, law of the case or other similar doctrines apply to bar, the Committee and any member of the Committee (acting in such member's individual capacity) to seek or object to any relief sought by the Debtors, DIP Agent and/or the DIP Lenders in connection with any matter arising in the Debtors' cases, including without limitation, with respect to any proposed plan of reorganization for the Debtors and with respect to 11 U.S.C. §§ 1110, 1113, 1114.

21.    **Reporting Requirements**.

(a) Simultaneously with and in the same manner as the delivery to the DIP Agent and DIP Lenders, the Debtors shall deliver to the Committee all information, reports, documents and other material that the Debtors provide to the DIP Agent and DIP Lenders pursuant to the DIP Loan Documents or this Final Order.

(b)    Simultaneously with and in the same manner as the delivery to the Debtors, the DIP Agent and DIP Lenders shall deliver to the Committee all information, notices, reports, documents and other material that the DIP Agent and DIP Lender provide to the Debtors pursuant to the DIP Loan Documents or this Final Order.

22.    **Retention of Jurisdiction**.  The Bankruptcy Court has and will retain jurisdiction to enforce this Final Order according to its terms.



Dated: Brooklyn, New York
       March 30, 2012

_____
       **Carla E. Craig**
**United States Bankruptcy Judge**