Hearing Date: April 3, 2013 at 11:30am EST
Objection Deadline: March 27, 2013 at 4:00pm EST

**LOWENSTEIN SANDLER LLP**
Sharon L. Levine, Esq.
S. Jason Teele, Esq.
Cassandra M. Porter, Esq.
1251 Avenue of the Americas, 17th Floor
New York, New York 10020
(212) 262-6700 (Telephone)
(212) 262-7402 (Facsimile)

-and-

65 Livingston Avenue
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2400 (Facsimile)

*Counsel to the Official Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>GLOBAL AVIATION HOLDINGS INC., *et al*.,<br><br><br><br><br><br><br><br><br>Debtors. | Chapter 11<br><br>Case No. 12-40783 (CEC)<br>Case No. 12-40782 (CEC)<br>Case No. 12-40784 (CEC)<br>Case No. 12-40785 (CEC)<br>Case No. 12-40786 (CEC)<br>Case No. 12-40787 (CEC)<br>Case No. 12-40788 (CEC)<br>Case No. 12-40789 (CEC)<br>Case No. 12-40790 (CEC)<br><br>(Jointly Administered) |

**THIRD INTERIM AND FINAL APPLICATION OF IMPERIAL CAPITAL, LLC FOR COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES AS FINANCIAL ADVISOR TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR THE PERIOD FROM <u>FEBRUARY 14, 2012 THROUGH OCTOBER 31, 2012</u>**

Name of Applicant:  <u>Imperial Capital, LLC                </u>

| Role in Case: | Financial Advisor to Official Committee of Unsecured Creditors |
|---|---|

Date of Retention: February 14, 2012 [Docket No. 403]

Period for which Compensation and Reimbursement is Sought: February 14, 2012 through October 31, 2012

Third Interim and Final Period: September 1, 2012 through October 31, 2012

Compensation Requested: $300,000.00[1]
Total Expenses Incurred: $16,699.60
Total Amount Sought: $316,699.60

All Compensation Periods: February 14, 2012 through October 31, 2012

Compensation Requested: $787,500.00
Total Expenses Incurred: $39,581.70[2]
Total Amount Sought: $827,081.70

Prior Applications: June 15, 2012 [Docket No. 427]; September 21, 2012 [Docket No. 606]

Aggregate Amounts Paid to Date: $349,570.64[3]

This is a/n: _____ Interim   __X__ Final Application.

Total Compensation and Expenses Previously Requested and Awarded:

| Application | Filed | Period Covered | Requested Fees | Requested Expenses | Approved Fees | Approved Expenses |
|---|---|---|---|---|---|---|
| First Interim | 06/15/12 | February 14, 2012 – May 31, 2012 | $262,500.00 | $19,720.14 | $262,500.00 | $15,720.14[2] |
| Second Interim | 09/21/12 | June 1, 2012 – August 31, 2012 | $225,000.00 | $7,161.96 | $225,000.00 | $7,161.96 |

---

[1] This amount includes a Completion Fee of $150,000, which represents a $100,000 reduction in the amount of Imperial's minimum Completion Fee of $250,000.

[2] Approved expenses reflect an agreement to reduce expenses by $4,000.00.

[3] Aggregate amount paid to date includes first and second interim periods served to the Debtors and subsequently paid prior to Imperial's submission of this Third Interim and Final Application.

Hearing Date: April 3, 2013 at 11:30am EST<br>Objection Deadline: March 27, 2013 at 4:00pm EST

**LOWENSTEIN SANDLER LLP**
Sharon L. Levine, Esq.
S. Jason Teele, Esq.
Cassandra M. Porter, Esq.
1251 Avenue of the Americas, 17th Floor
New York, New York 10020
(212) 262-6700 (Telephone)
(212) 262-7402 (Facsimile)

-and-

65 Livingston Avenue
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2400 (Facsimile)

*Counsel to the Official Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| GLOBAL AVIATION HOLDINGS INC., *et al.*, | Case No. 12-40783 (CEC)<br>Case No. 12-40782 (CEC)<br>Case No. 12-40784 (CEC)<br>Case No. 12-40785 (CEC)<br>Case No. 12-40786 (CEC)<br>Case No. 12-40787 (CEC)<br>Case No. 12-40788 (CEC)<br>Case No. 12-40789 (CEC)<br>Case No. 12-40790 (CEC) |
| Debtors. | (Jointly Administered) |

**THIRD INTERIM AND FINAL APPLICATION OF IMPERIAL CAPITAL, LLC FOR COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES AS FINANCIAL ADVISOR TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR THE PERIOD FROM FEBRUARY 14, 2012 THROUGH OCTOBER 31, 2012**

TO:   THE HONORABLE CARLA E. CRAIG
      UNITED STATES BANKRUPTCY JUDGE:

Imperial Capital, LLC ("Imperial"), financial advisor to the Official Committee of Unsecured Creditors (the "Committee") in the above-referenced chapter 11 cases for Global Aviation Holdings Inc. and certain of its direct and indirect subsidiaries, as debtors and debtors in possession (collectively, the "Debtors"), submits this third interim and final application (the "Third Interim and Final Application") seeking allowance of (a) compensation for professional services rendered by Imperial to the Committee for the period from September 1, 2012 to October 31, 2012 in the amount of $300,000 which includes an Amended Completion Fee (defined below) of $150,000 that has been reduced by $100,000 from the minimum Completion Fee of $250,000 as part of a global settlement with the Debtors and other parties (the "Third Interim Period"), (b) reimbursement of actual and necessary charges and disbursements incurred by Imperial in the performance of required professional services on behalf of the Committee in the amount of $16,699.60 during the Third Interim Period and (c) final approval of Imperial's fees and reimbursable expenses previously approved by the Court in connection with its first interim fee application (the "First Interim Application") for the period from February 14, 2012 through May 31, 2012 (the "First Interim Period"), and second interim fee application (the "Second Interim Application") for the period from June 1, 2012 through August 31, 2012 (the "Second Interim Period") and, together with the First Interim Period and Third Interim Period (the "Interim Periods"), in all cases pursuant to section 330(a) of title 11 of the United States

Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330, adopted on January 30, 1996 (the "UST Guidelines"), General Order M-389, Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases (the "Local Guidelines"), the Order to Establish Procedures For Interim Compensation and Reimbursement of Expenses of Professionals, dated March 8, 2012 [Docket. No. 200] (the "Interim Compensation Order" and, collectively with the UST Guidelines and the Local Guidelines, the "Guidelines").  In support of this Third Interim and Final Application, Imperial respectfully represents as follows:

## Background

1.     On February 5, 2012 (the "Petition Date"), the Debtors commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

2.     On February 13, 2012, the United States Trustee for Region 2 (the "US Trustee") appointed the Committee. The Committee selected the Goodrich Corporation as its chairperson (the "Chairperson").

3.     Immediately following its appointment and the selection of its Chairperson, the Committee conducted its initial meeting and selected Lowenstein Sandler PC ("Lowenstein") as its counsel.

### Jurisdiction and Venue

4. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Retention of Imperial

5. On February 14, 2012, the Committee convened a meeting by telephone and selected Imperial as financial advisor to the Committee.

6. On March 19, 2012, the Committee filed the *Application of the Official Committee of Unsecured Creditors for Order Pursuant to Section 328(a) and 1103 of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Local Rule 2014-1 Authorizing the Employment and Retention of Imperial Capital, LLC as its Financial Advisor, Effective as of February 14, 2012* [Docket. No. 253].

7. On June 1, 2012, the Court approved Imperial's retention by the *Amended Order Approving Application Authorizing Employment and Retention of Imperial Capital, LLC as Financial Advisor to the Official Committee of Unsecured Creditors, Effective as of February 14, 2012*, [Docket No. 403] (the "Retention Order"). The Retention Order authorized Imperial to be compensated on a monthly basis and to be reimbursed for actual and necessary out-of-pocket expenses.

8. Pursuant to the Retention Order, Imperial was retained with respect to the following advisory services (collectively, the "Advisory Services"):

(i) analysis of the Debtors' businesses, operations, properties, financial condition, competition, forecast, prospects and management;

(ii) financial valuation of the ongoing operations of the Debtors;

    (iii)    assisting the Committee in developing, evaluating, structuring and negotiating the terms and conditions of a potential restructuring plan, including the value of the securities, if any, that may be issued under a restructuring plan; and

    (iv)    providing such other financial advisory services with respect to the Debtors' financial issues as may from time to time be agreed upon between the Committee and Imperial

9. Per Imperial's engagement letter approved by the Court in the Retention Order, Imperial is entitled to (i) a $75,000 fee payable monthly for Advisory Services provided to the Committee (the "<u>Monthly Advisory Fees</u>").  Moreover, Imperial is also entitled to a completion fee ("Completion Fee") of not less than $250,000 and not more than $750,000, in such amount the Committee may determine in its sole and reasonable discretion, payable in cash by wire upon Bankruptcy Court approval and the consummation of a restructuring defined as a (a) confirmation of a plan of reorganization in the Debtors' bankruptcy proceedings, or (b) a sale involving all or a substantial amount of the business, securities or assets of the Debtors.  Pursuant to a subsequent agreement with the Debtors and the first lien noteholders, Imperial agreed to reduce its Completion Fee to $150,000 (the "<u>Amended Completion Fee</u>").

<b><u>Relief Requested</u></b>

10. By this Third and Final Application, Imperial seeks allowance, on a final basis, of (i) compensation for professional services rendered to the Committee in the aggregate amount of $637,500.00, representing 100% of the total Monthly Advisory Fees requested from February 14, 2012 to October 31, 2012 ($75,000 on a monthly basis), (ii) an Amended Completion Fee of $150,000.00, and (iii) the reimbursement of actual, necessary expenses incurred, net of

$4,000.00 of voluntary reductions during the Interim Periods in connection with such services in the aggregate amount of $39,581.70.

11. With the filing of this Third Interim and Final Application, and in compliance with the Interim Compensation Order[4], Imperial sent the Debtors, counsel for the Debtors, counsel for the Committee, the U.S. Trustee, counsel to the ad hoc committee of the first lien Noteholders, counsel to the indenture trustee for the first lien notes and second lien term loan, counsel to the holder of the second lien term loan, and counsel to the prepetition equity holders monthly fee statements for professional services rendered and expenses incurred during the Interim Periods.

12. Annexed hereto as Exhibit A is a summary of time spent by Imperial's professionals in connection with the Advisory Services rendered during the Interim Periods for which Imperial seeks payment of the Monthly Advisory Fees and the Amended Completion Fee. Annexed hereto as Exhibit B is a summary of the types of expenses for which reimbursement is sought. Annexed hereto as Exhibit C is the certification of Marc A. Bilbao with respect to the Third Interim and Final Application. Annexed hereto as Exhibit D is a schedule setting forth the number of hours and the related activity expended by each Imperial professional who rendered services to the Committee during the Interim Periods. Annexed hereto as Exhibit E is a schedule specifying the categories of expenses for which Imperial is seeking reimbursement, the total amount and detail of expenses by employee and category.

13. During the Interim Periods, Imperial performed several key services to the Committee at substantial benefit to the Debtors' estate. A summary of key services provided during the Interim Period is listed below:

---

[4] Imperial's retention was approved by the Court on June 1, 2012 through the Retention Order. Monthly fee statements have been served contemporaneously to required parties as specified by the Interim Compensation Order.

(i) Shortly after the Committee selected Imperial as its financial advisor, the Debtors filed a motion seeking $45 million in DIP financing on February 24, 2012. Imperial evaluated the Debtors' proposed DIP financing structure and documentation, identified numerous areas for improvement, and was able to secure a viable alternative DIP proposal in only a few days when the Debtors had concluded none were available. Imperial's efforts, along with efforts of Lowenstein, resulted in the improvement of several aspects of the original DIP proposal including (1) a reduction in the required roll-up of prepetition obligations from 3:1 to 1:1, (2) extension of key milestones regarding delivery of the Debtors' business plan and completion of fleet and labor negotiations, (3) reductions in transaction fees payable by the Debtors on account of the DIP financing and (4) an extension of the Committee's lien challenge period.

(ii) Imperial evaluated the Debtors' business strategy and several iterations of its long-term business plan and financial projections. Imperial analyzed the Debtors' financial projections by aircraft type and line of business, diligenced projected capital expenditure needs and projected free cash flow, performed sensitivity analyses of key assumptions and analyzed projected cost savings generated by renegotiating lessor and labor agreements.

(iii) Imperial, on behalf of the Committee, met and held numerous telephonic discussions with the Debtors' management team and Rothschild to discuss the Debtors' business plans, ongoing labor negotiations and its overall business strategy and subsequently communicated its various findings to the Committee.

        We believe we identified certain risks or issues with various assumptions that were subsequently modified in updated projections prepared by the Debtors.

(iv) As members of the Committee, representatives from the Debtors' labor groups received our analyses and discussion materials and often asked follow-up questions regarding the same. We believe our work was helpful to the labor groups in understanding the Debtors' business plan and associated risks and opportunities as they were negotiating modifications to their collective bargaining agreements and their future ownership stake in the reorganized Debtors.

(v) Imperial and Lowenstein analyzed the Debtors' proposed amendments to its collective bargaining agreements with the International Brotherhood of Teamsters, the Air Line Pilots Association, and the Transport Workers Union filed with the Court on August 22, 2012.

(vi) Imperial monitored and diligenced the Debtors' weekly cash flow performance, liquidity and ongoing negotiations with organized labor groups, its lessors and the DIP lenders.

(vii) Imperial assisted Lowenstein in their analysis of existing liens and potential unencumbered assets in an effort to identify sources of recovery for unsecured creditors and worked closely with Lowenstein in the development of potential legal and negotiating strategies regarding the same.

(viii) Imperial worked closely with Lowenstein to negotiate a final global settlement with the Debtors and its lenders to provide a $250,000 cash payment to unsecured creditors, reductions in fees owed to Imperial and Lowenstein to the benefit of the Debtors' estate, and certain other modifications to the Plan of Reorganization.

(ix) Over the course of the Interim Periods, Imperial summarized and presented its ongoing analysis and diligence of the Debtors and case developments to the Committee on a weekly basis.

(x) Imperial also conducted various required ad-hoc analysis and diligence which is not included above.

## Summary of Financial Advisory Services Provided

14. Pursuant to the Retention Order, Imperial is entitled to a Monthly Advisory Fee of $75,000 per month. Moreover, pursuant to its agreement with the Debtors and the first lien lenders, Imperial is also entitled to an Amended Completion Fee of $150,000.00. For the Interim Periods, Imperial seeks the amount of $787,500.00 for the period February 15, 2012 through October 31, 2012 as authorized in Imperial's Retention Order inclusive of $637,500.00 of Monthly Advisory Fees and the Amended Completion Fee of $150,000.00.

15. Imperial's professionals expended a total of 2,335.5 hours during these Interim Periods.

## Summary of Services by Categories

16. The services rendered by Imperial during the Interim Periods can be grouped into the categories set forth below. Imperial attempted to place the services provided in the category that best relates to such services. However, because certain services may relate to one or more categories, services pertaining to one category may in fact be included in another category. A more detailed identification of the actual services provided is set forth in the attached Exhibit D.

Category 1: General Case Administration

Category 1 includes review of case docket, internal discussions and meetings, administrative matters and other activities that do not otherwise fit into another category as

defined below.

Category 2: Imperial Retention

Category 2 includes all case administration related to the employment of Imperial, including preparation of its application for employment, conflicts check, fee applications, and time and expense records.

Category 3: Travel

Category 3 includes all required travel for attendance at hearings or meetings. During the Interim Periods, Imperial traveled to New York for Court hearings regarding the Debtors' DIP financing, Imperial's retention, the Debtors' proposed KERP, the Debtors' disclosure statement hearing and the Committee's standing hearing. Imperial traveled to Atlanta to meet with the Debtors' management team and Rothschild to discuss the Debtors' business plan, ongoing labor negotiations and the Debtors' overall business strategy. Additionally, Imperial traveled for meetings with Committee members and to meetings with potential DIP providers.

Category 4: Discussions / Negotiations with Case Constituents

Category 4 includes all matters related to interaction with key case constituents and their professionals. During the Interim Periods, Imperial had a number of discussions with the these parties related to, among other topics, the Debtors' DIP financing, the Debtors' weekly cash flow performance, the Debtors' business plan and projections, analysis of existing liens and potential unencumbered assets, negotiations with the Debtors' organized labor groups,, and the proposed treatment of various claims under the plan of reorganization.

Category 5: Due Diligence

Category 5 includes due diligence surrounding general case developments, review of documents and analyses provided directly by the Debtors and posted to the Debtors' electronic data room, and ongoing review of the case docket, news and press releases related to the case.

Category 6: DIP / Exit Financing

Category 6 includes discussions with the Debtors regarding the DIP financing process, review of the proposed DIP order and loan documentation, solicitation of potential alternative DIP proposals, negotiations regarding modifications to the initial DIP proposal, analysis of the proposed prepetition roll-up, financial covenant levels, financing costs, procedural milestones and precedent DIP loans.  Category 6 also includes discussions with the Debtors and Rothschild regarding weekly analysis of the Debtors' cash flow performance and subsequent reforecasts of its 13-week cash flow forecasts and assessment of ongoing liquidity.

Category 7: Business Plan / Strategy

Category 7 includes advising the Committee with regards to all topics supporting the Debtors' updated business plan and reorganization strategy including in-depth analysis of the Debtors' updated business plan projections, projected labor-related cost savings, its go-forward aircraft fleet and proposed capital expenditure needs.  Category 7 also included the evaluation of various lease rejection filings, labor negotiations, restructuring professional fee retentions, court transcripts and testimony provided by the Debtors and their professionals.

Category 8: Committee Communications

Category 8 includes communications and presentations provided to the Committee with regards to the Debtors' DIP financing, Imperial's analysis of the Debtors' business plan and overall strategy, proposed restructuring professional retentions, weekly cash flow performance and liquidity, potential negotiating strategy in regards to recoveries on its claims, weekly updates regarding key case developments and analyses of various case developments.

Category 9: Reorganization and Claims Matters

Category 9 includes analysis of the Debtors' first day filings, proposed Plan of Reorganization and Disclosure Statement and claims analyses.

## Expenses Incurred by Imperial

17. Section 330 of the Bankruptcy Code authorizes "reimbursement for actual, necessary expenses" incurred by professionals employed under section 327 of the Bankruptcy Code. The total amount of the expenses incurred by Imperial, net of $4,000.00 of voluntary reductions during the Interim Periods was $39,581.70, as detailed in the attached Exhibit B.

## The Requested Compensation Should Be Allowed

18. Section 330 of the Bankruptcy Code provides that the Court may award a professional person employed under section 327 or 1103 of the Bankruptcy Code:

> (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, or attorney and by any paraprofessional person employed by any such person; and
>
> (B) reimbursement for actual, necessary expenses. 11 U.S.C. § 330(a)(1). Section 330(a)(3)(A) further provides the following standards for the Court's review of a fee application:

11 U.S.C. § 330 (a)(1)(A)-(B).

19. In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including:

    (A)    the time spent on such services;

    (B)    the rates charged for such services;

    (C)    whether the services were necessary to the administration of, or beneficial at the time the service was rendered toward the completion of, a case under this title;

    (D)    whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

    (E)    whether the compensation is reasonable, based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3)(A)-(F).

20. Imperial respectfully submits that it has satisfied the requirements for the allowance of the compensation and reimbursement of expenses sought herein. The services described above, at the time they were provided, were necessary and beneficial to the administration of the Debtors' chapter 11 cases. Imperial's services provided to the Committee were consistently performed in a timely manner, commensurate with the complexity of the issues of these cases and the nature and importance of the problems, issues, and tasks. Furthermore, the compensation sought by Imperial is reasonable because it is based on the customary compensation charged by comparably skilled practitioners outside of bankruptcy. Accordingly, approval of the compensation sought herein is warranted.

21. As described above, Imperial made meaningful contributions to these cases. Immediately following Imperial's selection as financial advisor to the Committee, Imperial

evaluated the Debtors' existing DIP proposal and solicited a viable alternative DIP proposal when the Debtors had concluded none was available. In doing so, Imperial and Lowenstein were able to negotiate improvements in the underlying terms of the Debtors' proposed DIP financing that were beneficial to the estate, including a reduction in the DIP lenders' pre-petition roll-up, an extension of the DIP facility maturity from six months following the Petition Date to six months following the Closing Date of the DIP loan and an extension of the required milestones surrounding the Debtors' aircraft lease and labor restructurings. Furthermore, negotiations around the DIP resulted in a reduction in fees payable to the Debtors' and DIP lenders' financial advisors in relation to the Debtors' proposed DIP financing. Imperial's efforts, along with Lowenstein's efforts provided the Debtors and its lessor and labor constituencies additional flexibility to achieve a consensual solution by extending the milestones specified in the proposed DIP facility.

22. Additionally, Imperial's analyses and discussion materials were available to representatives from the Debtors' labor groups who were members of the Committee. We believe our work was helpful to the labor groups in understanding the Debtors' business plan and associated risks and opportunities as they were negotiating modifications to their collective bargaining agreements and their future ownership stake in the reorganized Debtors.

23. At the onset of these cases, it was apparent that achieving a recovery for the Committee would be challenging given the sizable existing first and second lien claims securing to all of the Debtors' prepetition assets; an unusual capital structure for an airline. Ultimately, Imperial, along with Lowenstein, was able to achieve a $250,000 cash recovery payable to the Committee upon the confirmation of the Debtors' plan of reorganization. As part of this

settlement, Imperial agreed to reduce its Completion Fee by $100,000 (which only the UST and the Court were permitted to review under Section 330).

24. As outlined herein, Imperial's services provided to the Committee were beneficial to the Committee and the estate in these chapter 11 cases. Imperial achieved its stated goal to maximize the Committee's recovery and respectfully submits the proposed compensation and reimbursements of expenses sought herein should be provided.

### Statements of Imperial Pursuant to Bankruptcy Rule 2016(a)

25. Imperial has submitted monthly statements contemporaneously with this Interim Application and has not received any payment to date on account of services provided by Imperial for the benefit of the Committee during the Interim Period.

26. No agreement or understanding exists between Imperial and any third person for the sharing of compensation, except as allowed by section 504(b) of the Bankruptcy Code and Bankruptcy Rule 2016 with respect to the sharing of compensation between and among partners of Imperial. All of the services for which compensation is sought in this Interim Application were rendered at the request of, and solely on behalf of, the Committee, and not at the request of, or on behalf of, any other person or entity.

### Notice

27. Notice of this Third Interim and Final Application and its exhibits will be given to (a) the Debtors; (b) counsel to the Debtors; (c) counsel for the Committee; (d) the U.S. Trustee; (e) counsel to the ad hoc committee of the first lien Noteholders; (f) counsel to the indenture trustee for the first lien notes and second lien term loan; (g) counsel to the holder of the second lien term loan; (h) and counsel to the prepetition equity holders pursuant to the Interim

Compensation Order and case management order entered on March 8, 2012. Imperial respectfully submits that no other or further notice is required.

## **Conclusion**

WHEREFORE, Imperial respectfully requests that the Court enter a final order: (a) allowing compensation of $787,500.00 to Imperial for professional services rendered as financial advisor to the Committee during the Interim Periods inclusive of $637,500.00 in Monthly Advisory Fees and a $150,000.00 Amended Completion Fee, plus reimbursement of actual and necessary charges and disbursements incurred, net of $4,000.00 of voluntary reductions, in the sum of $39,581.70 in connection with Imperial's services during the Interim Periods; (b) granting approval of all fees and expenses applied for in connection with Imperial's First Interim Application and Second Interim Application, and deeming such approval as final; and (c) granting to Imperial such other and further relief as the Court may deem proper.

*[Remainder Of Page Intentionally Left Blank]*

          Respectfully submitted,

            /s/ *S. Jason Teele*
          **LOWENSTEIN SANDLER LLP**
          Sharon L. Levine, Esq.
          S. Jason Teele, Esq.
          Cassandra M. Porter, Esq.
          1251 Avenue of the Americas, 18th Floor
          New York, New York 10020
          (212) 262-6700 (Telephone)
          (212) 262-7402 (Facsimile)

          -and-

          65 Livingston Avenue
          Roseland, New Jersey 07068
          (973) 597-2500 (Telephone)
          (973) 597-2400 (Facsimile)

          *Counsel to the Official Committee of Unsecured Creditors*

Dated: March 1, 2013
      New York, New York