UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| GLOBAL AVIATION HOLDINGS INC., *et al.*, | Case Nos. 12-40783 (CEC) |
| | 12-40782 (CEC) |
| | 12-40784 (CEC) |
| | 12-40785 (CEC) |
| | 12-40786 (CEC) |
| | 12-40787 (CEC) |
| | 12-40788 (CEC) |
| | 12-40789 (CEC) |
| | 12-40790 (CEC) |
| Debtors. | Jointly Administered |

## DECISION

APPEARANCES:

| | |
|---|---|
| Melissa N. Koss, Esq. | Shannon A. Scott, Esq. |
| Kirkland & Ellis LLP | Jaspan Schlesinger LLP |
| 601 Lexington Avenue | 500 Garden City Plaza |
| New York, New York 10022 | Garden City, New York 11530 |
| *Attorneys for Debtor* | *Attorneys for Magellan Aviation* |

CARLA E. CRAIG
Chief United States Bankruptcy Judge

This matter comes before the Court on motion of Magellan Aviation Services Limited ("Magellan") pursuant to Federal Rule of Bankruptcy Procedure 9006(b)(1), to deem its proof of claim and request for payment of an administrative expense timely filed, though they were filed after the bar date in this case. Global Aviation Holdings Inc. (the "Debtor") opposes the motion. For the following reasons, the motion is denied.

## Jurisdiction

This Court has jurisdiction of this core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (B), 28 U.S.C. § 1334, and the Eastern District of New York standing order of reference dated August 28, 1986, as amended by order dated December 5, 2012. This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Federal Rule of Bankruptcy Procedure 7052.

## Background

The following facts are undisputed, or are alleged by Magellan.

On February 5, 2012 (the "Petition Date"), the Debtor filed petitions for relief under chapter 11 of the Bankruptcy Code [Docket No. 1]. The Debtor operates two airlines, North American Airlines, Inc., ("North American") and World Airways, Inc. ("World"). Prior to filing, World was a party to a lease with Magellan dated October 1, 2008 (the "FAK Lease"), under which Magellan was a lessor of three Fly-Away Maintenance Kits (the "FAKs"). As the Debtor began to reduce its aircraft fleet, it determined that the FAKs were no longer necessary for its operations. As a result, the Debtor ceased use of the FAKs on February 29, 2012 and notified Magellan, in a letter dated April 2, 2012, of the Debtor's intent to reject the FAK lease. Motion Of Magellan Aviation Services Limited For The Entry Of An Order Permitting A Late Filed Claim Against Global Aviation Holdings Inc., Deeming Such Claim To Be Timely Filed And

Seeking The Allowance Of An Administrative Claim (the "Motion") at ¶ 4 [Docket No. 800]. On June 15, 2012, the Court entered an order approving the rejection with respect to Magellan, effective as of February 29, 2012 (the "Rejection Order") [Docket No. 426].

After receipt of the April 2nd letter, but prior to the Rejection Order, Magellan's Vice President of Sales and Marketing traveled to World's headquarters to pick up the FAKs, as well as certain parts, tools, and equipment that were supplied under the FAK Lease. Motion at ¶ 6. However, Magellan did not recover all the equipment sought, because certain parts remained with World or were in possession of a third party. Motion at ¶ 8; Objection at ¶ 2 [Docket No. 908]. Magellan received the remainder of the FAK parts in early July ("the July Delivery"). Motion at ¶ 9. The July Delivery contained items that were "non-conforming" under the lease terms, as they needed repairs, overhaul, and service. Motion at ¶ 4. However, World was not as "receptive" to resolving Magellan's issues with the returned items as it had been in prior months. Motion at ¶ 11. The FAKs returned to Magellan in April were mostly in good working order, and to the extent that they were not, World and Magellan resolved all issues in that regard. Motion at ¶ 7. Ultimately, it became clear to Magellan that World would not service, repair, or overhaul the FAKs returned in the July Delivery, and that it would cost Magellan several hundred thousand dollars to do so. Motion at ¶ 12.

On June 15, 2012, the Court entered an Order (the "Bar Date Order") establishing July 30, 2012 (the "Bar Date") as the deadline to file proofs of claims.[1] [Docket No. 434]. The Bar Date applied to claims arising from or related to the rejection of unexpired leases, including claims that arose or are deemed to have arisen pre-petition, as well as to administrative claims.

---

[1] The Bar Date Order stated that parties holding a claim arising from or related to rejection of executory contracts or unexpired leases ("Rejection Damages Claim") were required to file a proof of claim by the later of July 30, 2012 or 30 days after rejection of the executory contract or unexpired lease. Because the order authorizing rejection of the FAK lease was entered on June 15, 2012, Magellan had until July 30, 2012 to file its proof of claim.

On June 22, 2012, the Notice of Deadline Requiring Proofs of Claim ("Claim Deadline Notice") was sent by first-class mail to Magellan [Docket No. 459]. Magellan does not dispute that it received notice of the Bar Date.

Magellan did not submit a claim before the Bar Date. On December 5, 2012, one day prior to the plan confirmation hearing in this case, Magellan filed the Motion seeking permission to file a proof of claim for $252,750 ("Claim") against the Debtor, which Magellan contends is entitled to administrative expense priority.

## Legal Standard

In chapter 11 cases, the "court shall fix and for cause shown may extend the time within which proofs of claim or interest may be filed." Fed. R. Bankr. P. § 3003(c)(3). "A bar order serves the important purpose of enabling the parties to a bankruptcy case to identify with reasonable promptness the identity of those making claims against the bankruptcy estate and the general amount of the claims, a necessary step in achieving the goal of successful reorganization. First Fidelity Bank, N.A. v. Hooker Invs., Inc. (In re Hooker Invs., Inc.), 937 F.2d 833, 839 (2d Cir. 1991) (citing United States v. Kolstad (In re Kolstad), 928 F.2d 171, 173-174 (5th Cir. 1991); In re STN Enterprises, Inc., 99 B.R. 218 (D. Vt. 1988)). Federal Rule of Bankruptcy Procedure 9006(b)(1) allows the Court, on motion, to enlarge the time to file a proof of claim, for excusable neglect. See Fed. R. Bankr. P. § 9006(b)(1) ("[W]hen an act is required or allowed to be done at or within a specified period . . . the court for cause shown may at any time in its discretion . . . on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect."). The burden to prove excusable neglect rests with the party seeking to file a late proof of claim. Midland

Cogeneration Venture L.P. v. Enron Corp. (In re Enron Corp.), 419 F.3d 115, 121 (2d Cir. 2005) (citing Jones v. Chemetron Corp., 212 F.3d 199, 205 (3d Cir. 2000)).

To determine whether excusable neglect exists, courts apply a two part test. In re Banco Latino Intern., 310 B.R. 780 (S.D. Fla. 2004), summarily aff'd, 404 F.3d 1295 (11th Cir. 2005); In re Crane Rental Co., Inc., 334 B.R. 73 (Bankr. D. Mass. 2005). First, the court must determine whether failure to file a claim was due to neglect, not a conscious or deliberate decision. Neglect occurs due to "inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control". Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship 507 U.S. 380, 388 (1993). A claim which is filed late due to conscious disregard of the bar date cannot be saved by Rule 9006(b)(1). Jacobson v. Official Comm. of Unsecured Creditors of Mahoney Hawkes, LLP (In re Mahoney Hawkes, LLP), 272 B.R. 19, 20 (B.A.P. 1st Cir. 2002) (holding that conscious disregard does not constitute neglect).

If the court determines that the failure to file is a result of neglect, the second inquiry is whether the neglect was excusable. The determination of whether neglect is excusable "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omissions." Pioneer, 507 U.S. at 395. In Pioneer, the United State Supreme Court set forth four factors courts must address in determining whether excusable neglect exists: (1) the danger of prejudice to the non-moving party; (2) the length of the delay and its potential impact on court proceedings; (3) the reason for the delay, including whether it was within the movant's reasonable control; and (4) whether the movant acted in good faith. Id.

In the Second Circuit, the nature of the excuse given for the late filing is weighted more heavily than the other Pioneer factors. Enron, 419 F.3d at 123 (citing Silivanch v. Celebrity Cruises, Inc., 333 F.3d 355, 368 (2d Cir. 2003)); In re Victory Mem'l Hosp., 435 B.R. 1, 5

(Bankr. E.D.N.Y. 2010).  The other Pioneer factors are relevant "only in close cases." Williams v. KFC Nat'l Mgmt. Co., 391 F.3d 411, 415-416 (2d Cir. 2004).  The Second Circuit has taken a "hard line" approach in applying the Pioneer standard.  Enron, 419 F.3d at 122; Silivanch, 333 F.3d at 368.  "[T]he equities will rarely if ever favor a party who 'fails to follow the clear dictates of a court rule' and . . . where 'the rule is entirely clear, . . . a party claiming excusable neglect will, in the ordinary course, lose under the *Pioneer* test.'"  Silivanch, 333 F.3d at 366-367 (quoting Canfield v. Van Atta Buick/GMC Truck, Inc., 127 F.3d 248, 250-251 (2d Cir. 1997)).

## Discussion

Magellan states that the untimely filing of its Claim is due to excusable neglect because there was a modest amount of time between the July Delivery and the Bar Date (three weeks); because it believed that the Debtor would voluntarily repair any non-conforming parts, as it had in the past; and because it is "a company unfamiliar with bankruptcy proceedings and located outside of New York".  Movant's Reply at 1 [Docket No. 923].  The Debtor argues that Magellan has failed to establish excusable neglect and that the Claim should be barred.

1. Magellan's Reason For Delay

Magellan admits that it received the July Delivery on or about July 9, three weeks before the Bar Date.  Motion at ¶ 9.  However, Magellan asserts that "Magellan's realization that the July Delivery of the FAKs were damaged occurred shortly before the Bar Date" and this timing was a factor in the late filing of its Claim.  Motion at ¶ 29.

Magellan received the July Delivery in time to file a proof of claim.  Magellan knew that if the equipment was not in conforming order, and if the debtor did not voluntarily pay the repair costs, that Magellan would have a claim against the Debtor.  If Magellan was unable to ascertain


6

the amount or extent of its claim, it had the option to file a claim in an unliquidated amount.[2] Instead, Magellan made the assumption that the Debtor would undertake to expend the funds to put the equipment in working order.  The fact that this assumption turned out to be unwarranted does not constitute a basis for extending the bar date.

Magellan is correct that excusable neglect is an "elastic concept", not limited to situations where the failure to timely file was due to circumstances beyond the filer's control.  Pioneer, 507 U.S. at 392.  However, since Pioneer, it has been well established that "where a party's actions are deliberate, the party's late filing cannot constitute 'excusable neglect.'"  Bokay Co. v. Celotex Corp. (In re Celotex Corp.), 232 B.R. 493, 495 (M.D. Fla. 1999) (quoting Agribank v. Green, 188 B.R. 982, 988 (C.D. Ill. 1995) and citing In re Enstar Group, Inc., 215 B.R. 235, 237 (Bankr. M.D. Ala. 1996)); In re Montaldo Corp., 209 B.R. 40, 48 (Bankr. M.D. N.C. 1997); In re LAN Assocs. XIV, L.P., 193 B.R. 730, 737 (Bankr. D. N.J. 1996); In re Bicoastal Corp., 176 B.R. 966, 971 (Bankr. M.D. Fla. 1994).  See also, In re Dauer, 165 B.R. 146 (Bankr. D.N.J. 1994) ("It follows that having made a deliberate decision not to file a timely proof of claim in this case, [creditor's] untimely claim must be disallowed."); Mahoney Hawke, 272 B.R. at 19 (affirming bankruptcy court's order denying motion to allow late-filed claim as timely because the "tardiness was borne of calculation rather than neglect").

Nor can Magellan rely on the fact that it was a non-resident of this state, or that it was unfamiliar with bankruptcy proceedings, as an excuse for its untimely filing of a claim.  Failure to file due to inadvertence or ignorance of the rules does not usually constitute excusable

---

[2] "While . . . the precise dollar amount of a creditor's claim 'may not be finally determined until adversary proceedings have been concluded,' . . . bar dates nonetheless 'serve[ ] the important purpose of enabling the parties to a bankruptcy case to identify with reasonable promptness the identity of those making claims against the bankruptcy estate and the general amount of the claims, a necessary step in achieving the goal of successful reorganization.'" Midland Cogeneration Venture L.P. v. Enron Corp. (In re Enron Corp.), 419 F.3d 115, 128 (2d Cir. 2005) (quoting First Fid. Bank, N.A., N.J. v. Hooker Invs., Inc. (In re Hooker Invs., Inc.), 937 F.2d 833 (2d Cir. 1991).

neglect. Pioneer, 507 U.S. at 392; Enron, 419 F.3d at 126 (affirming bankruptcy court's ruling that creditor's failure to file a timely claim due to inadvertence did not provide a "genuine reason for the delay" satisfying the third Pioneer factor). Magellan does not claim that it "consciously endeavored to comply with the bar date and established that [its] delay was the result of justifiable confusion over the application of the bar date to [its] particular claims." In re Lehman Bros. Holdings, Inc., 433 B.R. 113, 127 (Bankr. S.D.N.Y. 2010). "[T]he rule is entirely clear . . . a party claiming excusable neglect will, in the ordinary course, lose under the *Pioneer* test." Silivanch, 333 F.3d at 366-367 (quoting Canfield 127 F.3d at 250-251). Here, the Bar Date was clear, both as to the deadline and as to its applicability to Magellan's claim. Magellan has provided no reason for its failure to comply that rises to the level of excusable neglect.

2. The Length Of Delay

To determine whether a delay is substantial, a court will consider whether the delay will "'disrupt the judicial administration of the case.'" Enron, 419 F.3d at 128 (quoting In re Infiltrator Sys., Inc., 241 B.R. 278, 281 (Bankr. D. Conn. 1999)). Courts also consider whether the plan of reorganization has already been filed or confirmed. Id. Ultimately, however, a court must consider the delay "in the context of the proceeding as a whole." Id. "[T]he evaluation of lateness should, at least to some extent, also take into account the creditor's explanation for the delay." Id.

In this case, the time between the Bar Date and the filing of the Motion is greater than four months, and Magellan filed the Motion one day before the hearing on confirmation of the Debtor's plan of reorganization. Magellan states, in its Motion, that it immediately contacted counsel once it became clear that World was in breach of the FAK Lease, but does not indicate when that contact occurred or otherwise explain this four month delay.   Motion at ¶ 16.

Magellan's delay was substantial, and lacks any reasonable explanation. In Enron, the Second Circuit noted that "some courts have also suggested that a relevant consideration is whether a reorganization plan has been filed or confirmed by the time a late claim is submitted. 419 F.3d at 128 (citing Infiltrator, 241 B.R. at 281). Although the Enron court held "whether a claim is submitted before the date on which a reorganization plan is filed" is not ordinarily conclusive, here the claimant not only waited until the day prior to the confirmation hearing, but also failed to provide any explanation for the delay. "[W]here an explanation is nonexistent, or not credible, *both* the 'reason for the delay' and the 'length of the delay' factors might weigh in favor of the debtor, even if the delay is, in absolute terms, quite short." Enron, 419 F.3d at 129. Because Magellan's delay in filing this motion was significant, and because no reasonable explanation has been provided for it, this factor weighs against Magellan.

3. Danger Of Prejudice

Magellan argues that the delay in filing did not prejudice the Debtor in any way, since its claim would have been allowable before the Bar Date. The Debtor argues that allowing Magellan's claim could open the floodgates to other untimely claims. The Debtor is also concerned about the size of Magellan's claim, noting that the Claim is more than the recovery pool for all allowed general unsecured claims in the Debtor's case.

Courts have considered various factors in determining whether prejudice exists, including "the size of the late claim in relation to the estate, whether a disclosure statement or plan has been filed or confirmed with knowledge of the existence of the claim, the disruptive effect that the late filing would have on a plan close to completion or upon the economic model upon which the plan was formulated and negotiated." In re Keene Corp., 188 B.R. 903, 910 (Bankr.

S.D.N.Y. 1995). Another consideration is "whether allowing a claim would be likely to precipitate a flood of similar claims." Enron, 419 F.3d at 130. See also Keene, 188 B.R. at 913.

Magellan contends that its claim is entitled to administrative expense priority, and the Debtor contends that the claim is allowable, if at all, as a general unsecured claim. At this point, the size of Magellan's claim in relation to the total amount of unsecured claims, or in relation to the total amount of administrative claims, is difficult to assess, as the claims resolution process is ongoing. However, the Debtor's concern that allowance of Magellan's claim would "open the floodgates" to other requests for allowance of late filed claims has validity, especially given the absence of any special circumstances justifying Magellan's failure to file by the Bar Date. If Magellan is permitted to file a late claim based upon inadvertence, lack of familiarity with the bankruptcy process, or a mistaken assumption that the Debtor would voluntarily pay the claim, what is to prevent other creditors, unsecured or administrative, from seeking permission to file late claims on similar grounds? "[T]he legal fees the estate would potentially expend in litigating [late filed claims] supports a finding of prejudice." Victory Mem'l Hosp., 435 B.R. at 9 (citing Keene, 188 B.R. at 913). In any event, the burden of establishing lack of prejudice lies with the party seeking relief under the Federal Rule of Bankruptcy Procedure 9006, and Magellan "introduced no evidence concerning the number of *potential* claimants who might have been prompted to file late claims in the wake of a ruling" in its favor. Enron, 419 F.3d at 132.

However, even in the absence of prejudice, Magellan's motion must fail. Magellan has failed to satisfy two of the other three Pioneer factors,[3] and most importantly, has failed to provide any reason for the failure to timely file that constitutes excusable neglect. Magellan's assertion that the Debtor would not be prejudiced, alone, is insufficient. As noted in Keene, "Pioneer does not stand for the proposition 'no harm, no foul.'" 188 B.R. at 909.

---

[3] Magellan contends that it has acted in good faith, and the Debtor does not contend otherwise.

Given this conclusion, Magellan's contention that its claim is entitled to administrative priority need not be addressed.

<u>Conclusion</u>

For the foregoing reasons, Magellan's motion is denied. A separate order will issue.



**Dated: Brooklyn, New York**
**July 22, 2013**

_____
**Carla E. Craig**
**United States Bankruptcy Judge**